**Florence RYMAN, Plaintiff,**

v.

**Joseph REICHERT, et al., Defendants.**

**No. C–3–82–564.**

United States District Court,
S.D. Ohio, W.D.

Feb. 22, 1985.

Michael Tucker, Dayton, Ohio, for plaintiff.

Wayne P. Stephan, Michael Russell, Dayton, Ohio, for defendants.

## DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING THAT FILED BY PLAINTIFF; TRIAL DATE VACATED; FURTHER PROCEDURES ORDERED

RICE, District Judge.

This lawsuit arises out of the termination of Plaintiff's employment as a desk officer with the Mad River Township Police Department. Plaintiff's termination occurred as a result of a decision by the Mad River Township Board of Trustees to abolish the position of desk officer and to establish the position of police clerk in its place. In her Amended Complaint, Plaintiff alleges that the termination of her employment resulted in a deprivation of property without due process of law and that the termination was arbitrary and capricious, not rationally related to any legitimate governmental purpose and deprived her of the equal protection of the laws. Further facts and circumstances surrounding this action are set forth in this Court's Decision and Entry of October 21, 1983 (Doc. # 28).

In the Decision and Entry of October 21, 1983, the Court overruled Plaintiff's and Defendants' motions for summary judgment. Directing its attention to the question of whether Plaintiff had a property interest in continued employment, a necessary predicate for Plaintiff's claim that she was denied employment without due process, the Court concluded that a genuine issue of material fact remained as to whether Plaintiff had such a property interest. Under the leading case of *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the question of whether a person has a property interest in continued employment must be decided with reference to state law. In the Decision and Entry of October 21, 1983, the Court reviewed the facts and circumstances surrounding Plaintiff's termination and the impact of state law upon that termination. The Court noted that Defendants did

not discharge Plaintiff. Rather, her job was abolished. Under state law, an appointing authority may abolish a position with the concomitant result that an employee loses her job, subject to the one important limitation that the appointing authority may not abolish a position as a mere subterfuge to rid itself of a particular employee.

The parties did not address the question of subterfuge in their motions for summary judgment; therefore, the Court directed the parties to file cross motions for summary judgment, addressing the question of whether the presence of subterfuge by the Defendants raises a genuine issue of material fact. Additionally, the Court directed the parties to address the questions of whether the availability to Plaintiff of the remedy of mandamus in state court, to order her reinstatement with back pay upon a finding that her job abolishment was a subterfuge, is a sufficient remedy so that the Court must conclude that, under the Supreme Court's rule in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Plaintiff suffered no deprivation of property *without due process*. The parties have filed their motions and memoranda. *See*, Docs. # 30, 31, 33, 34. It is to those motions that the Court now turns. Initially, the Court will address the question of whether the abolishment of Plaintiff's job was a mere subterfuge. Then, the Court will address the issues raised by *Parratt v. Taylor, supra.*

In the recent case of *Weston v. Ferguson*, 8 Ohio St.3d 52, 457 N.E.2d 818 (1983), the Ohio Supreme Court restated the guidelines that courts must follow in determining whether a job abolishment is a mere subterfuge:

It is well-established that the power to create a position in the civil service includes the power to abolish it. *State ex rel. Stine v. McCaw* (1940), 137 Ohio St. 13, 27 N.E.2d 488 [17 O.O. 303], paragraph one of the syllabus; *State, ex rel. Stoer v. Raschig* (1943), 141 Ohio St. 477, 49 N.E.2d 56 [26 O.O. 56], paragraph one

of the syllabus. This is particularly true where the purpose of such abolishment is economy or the increased efficiency of the public service. *Id.* Thus, an appointing authority has the power to abolish civil service positions pursuant to a plan of reorganization.

.　　.　　.　　.　　.　　.

The critical guideline in the abolishment of a civil service position is that it must be done in good faith and not as a subterfuge. *State, ex rel. Stoer v. Raschig, supra; State, ex rel. McGann v. Evatt* (1941), 138 Ohio St. 421, 35 N.E.2d 576 [20 O.O. 546]. A civil service employee may not be removed under the guise of abolishing his office when in fact the transaction amounts to no more than a change in the name of the position and the appointment of another person, the duties remaining substantially the same. *State, ex rel. Miller v. Witter* (1926), 114 Ohio St. 122, 150 N.E. 431. The theory is that a position may be abolished, but not the person. *Howie v. Stackhouse* (1977), 59 Ohio App.2d 98, 392 N.E.2d 1081 [13 O.O.3d 158]. The actual duties will be examined in order to determine whether a civil service job has been abolished in good faith or as a subterfuge. *State, ex rel. Click v. Thormyer* (1958), 105 Ohio App. 479, 151 N.E.2d 246 [6 O.O.2d 220]. Thus, an order abolishing a position is ineffective where a completely new appointee is hired to perform the same duties, *State, ex rel. Miller v. Witter, supra,* but a dismissal is valid when it is done for purposes of economy or improved public service and there is no ulterior motive. *State, ex rel. v. Stoer v. Raschig, supra; State, ex rel. McGann v. Evatt, supra.*

*Id.* at 53–54, 457 N.E.2d at 819–20.

Herein, Plaintiff argues that there is no genuine issue of material fact regarding the issue of whether the abolishment of her job was a subterfuge. Plaintiff asserts that the uncontested facts demonstrate that the Defendants abolished the position of desk officer as a subterfuge as a matter of law. *See,* Doc. # 31. In response, Defendants likewise contend that the question of whether the abolishment of Plaintiff's job was a mere subterfuge does not raise a genuine issue of material fact. Defendants contend that as a matter of law there was no subterfuge. *See,* Docs. # 30 and # 34.

█ The Court has reviewed the evidence before it and concludes that whether the abolishment of Plaintiff's job was a subterfuge does not raise a genuine issue of fact in that, as a matter of law, there was no subterfuge in the abolishment of her job. Therefore, as a matter of state law, since Plaintiff had no entitlement to or property interest in continued employment, she had no property interest to be protected. Accordingly, Plaintiff suffered no deprivation of property, with or without due process of law.

In reaching its conclusions, the Court relies on the depositions on file, the exhibits to Plaintiff's Motion for Summary Judgment (Doc. # 31), which the parties have agreed are authentic, and the Affidavit of Defendant Joseph Richert, attached to Defendant's Motion for Summary Judgment (Doc. # 30). This evidence reveals that the positions of desk officer and police clerk are similar. Indeed as Plaintiff argues, her position, that of desk officer, is *essentially* secretarial and clerical. The position of a police clerk *is* secretarial and clerical. Yet the Plaintiff ignores two important distinctions between the positions. The position of desk officer must be filled by a full-time patrolman. There is no such requirement for the position of police clerk. More importantly, Plaintiff's salary was approximately $18,000 per year. The salary for police clerk is approximately $10,000 per year.

Plaintiff points to the similarities between the two positions and argues that these similarities establish subterfuge as a matter of law. The Court accepts Plaintiff's characterization of the similarities between the jobs. Nonetheless, the Court concludes that under *state law* and under the present circumstances, the similarities are not enough to establish subterfuge. On the contrary, the uncontested evidence

demonstrates that the position of desk officer was abolished in good faith and not as a subterfuge. The Ohio Supreme Court has clearly stated that an appointing authority may abolish a position for the purpose of economy.[1] *Weston v. Ferguson, supra.* In the present case, Defendants abolished Plaintiff's job and created one with similar duties but which did not have to be filled by a full-time patrolman. Both jobs were essentially secretarial and clerical. However, the Defendants were able to save the Township nearly $8,000 per year in salary. Indeed, the affidavit of Joseph Reichert demonstrates that the sole reason for abolishing Plaintiff's job was to save money. Plaintiff has not filed an affidavit which contradicts Reichert's affidavit.[2] Therefore, the Court concludes that under state law, Plaintiff's position was abolished in good faith rather than as a subterfuge. Accordingly, the Court hereby sustains Defendants' Motion for Summary Judgment and overrules that filed by Plaintiff.

■ Assuming, arguendo, the existence of a property interest under state law, the Defendants alternatively move for summary judgment on the basis of *Parratt v. Taylor, supra.* In *Parratt*, a prisoner's hobby materials were misplaced by prison authorities. The prisoner sued under 42 U.S.C. § 1983 alleging a predeprivation of property without due process. Initially, the Supreme Court noted that a pre-deprivation hearing was not practicable. Therefore, the Supreme Court examined the post-deprivation remedies that the state provided. The Court concluded that the state's tort claims procedure was adequate to pro-

tect the prisoner's interests. Accordingly, the Court concluded that even though the prisoner may have suffered a deprivation of property, the deprivation was *not* without due process of law.

In applying *Parratt* to cases where an employee is discharged from government employment, the Sixth Circuit has consistently held that due process requires some sort of predischarge hearing. *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062 (6th Cir.1984); *Loudermill v. Cleveland Board of Education,* 721 F.2d 550 (6th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984). Therefore, the Sixth Circuit has concluded that post-discharge procedures do not adequately protect the discharged employee's interests, and *Parratt* does not apply. *Lee, supra.* *Lee* and *Loudermill* would seemingly control the outcome in this case. However, because the manner in which Plaintiff's employment was terminated is distinct from the terminations in *Lee* and *Loudermill,* a job abolishment as opposed to discharges, this Court concludes that *Lee* and *Loudermill* are distinguishable.[3] Moreover, for reasons that follow, the Court concludes that under the unique circumstances present herein, due process does not require a pre-termination hearing.

To reach its conclusion in *Loudermill* that due process requires a pre-discharge hearing, the Sixth Circuit undertook an analysis of the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). 721 F.2d at 561–63. In *Mathews,* the Supreme Court said:

1. The Plaintiff relies on *State, ex rel. Miller v. Witter,* 114 Ohio St. 122, 150 N.E. 431 (1926) and argues that the mere savings in salary is not a sufficient reason to justify the abolishment of a position. While there is language in *Witter* which supports this argument, the Court does not believe that it represents the current state of Ohio law. In *Weston v. Ferguson, supra,* the Ohio Supreme Court clearly said that the purpose of economy was a reason for abolishing a job.

2. In her deposition, Plaintiff said she did not believe that her job was abolished because of money. Ryman Dep. at 35. This is not suffi-

cient to create a genuine issue of fact because it simply fails to set forth facts within the Plaintiff's personal knowledge which would demonstrate that her job was abolished for a reason other than economy. *See,* Rule 56(e).

3. The present case is also distinguishable from *Lee, supra,* because the Defendants' actions were not done pursuant to an established state procedure. On the contrary, state law requires a hearing and finding of cause before a township can *discharge* a patrolman. Ohio Rev.Code §§ 505.491–505.495. However in the present case, Plaintiff's job was *abolished.*

These decisions underscore the truism that " '[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett v. Kennedy* [416 U.S. 134, 167–68, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974)] (Powell, J., concurring in part; *Goldberg v. Kelly* [397 U.S. 254, 263–66, 90 S.Ct. 1011, 1018–20, 25 L.Ed.2d 287 (1970)]; *Cafeteria Workers v. McElroy, supra,* [367 U.S.] at 895 [81 S.Ct. at 1748]. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35, 96 S.Ct. at 902–03.

Applying the first *Mathews* factor, the *Loudermill* court recognized that the interest in continued public employment "urquestionably is of vital importance." 721 F.2d at 561. It goes without saying that this Court follows *Loudermill* in this part of the *Mathews* analysis. Plaintiff had a vitally important interest in continued employment. However, Plaintiff's interest herein is somewhat different from that of the discharged employee in *Loudermill*. Herein, there is no risk that Plaintiff suffered stigma as a result of losing her job because she was not discharged; her job was abolished. On the contrary, the court in *Loudermill* recognized the potential for stigma when an employee is discharged. *Id.*

It is in applying the second *Mathews* factor that the present analysis departs most strikingly from that in *Loudermill*. Therein, the Court noted that a limited opportunity to present evidence is critical because the more information concerning an employee that government has, the better its decisions about that employee are likely to be. *Id.* at 562. In other words, government should hear from an employee prior to discharging him in order to minimize the risk of error. These concerns are not present herein. The Defendants did not purport to act on the basis of Plaintiff's job performance. Rather, the job that Plaintiff occupied was abolished. Thus, there is no need for Plaintiff to have an opportunity to present evidence on her job performance since that evidence would not have been relevant to the Defendants' decision to abolish her job.

An application of the third *Mathews* factor reveals that the interests of the government herein are distinct from those recognized in *Loudermill*. Here, the Defendants were acting *legislatively* in accordance with a statutory grant of authority to "determine the number of patrolmen and other personnel required by the district." Ohio Rev.Code § 505.49(A). The decision to abolish Plaintiff's job was not an administrative decision. In *Loudermill*, the court characterized the government's interests involved as avoiding excessive administrative burdens and ensuring effective employee discipline. While these were recognized as salutary, they were not sufficient to counterbalance the interests of the employee and the utility of a hearing which demanded a pre-termination hearing. Here, the government interest is of greater magnitude: the freedom to legislate without being required to give those affected by the legislation an *individualized* hearing prior to enacting such legislation.

The Court concludes that notwithstanding the compelling nature of Plaintiff's interest in continued employment, a pre-abol-

ishment hearing was not required. *Cf. Bi-Metallic Investment Co. v. Colorado,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915) (Due process does not require a hearing when government adopts a rule of conduct which applies generally). Because the Defendants were acting legislatively and in the absence of any utility in affording Plaintiff a hearing, the Court concludes that on balance due process did not require that Plaintiff be afforded a hearing prior to her termination.

Having concluded that due process does not require a pretermination hearing, the next step in the analytical process is to determine whether the post-abolishment remedy of mandamus[4] is sufficient under *Parratt* for this Court to conclude that Plaintiff did not suffer a property deprivation *without due process.* In *Campbell v. Shearer,* 732 F.2d 531 (6th Cir.1984), the court held that a plaintiff in a 1983 action who alleges the deprivation of property without due process has the burden of pleading and proving that state remedies are inadequate to redress the alleged wrong. *Id.* at 533. *See also, Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983). In the present case, Plaintiff has failed to demonstrate that the post-abolishment remedy of mandamus is inadequate. Mandamus would afford Plaintiff reinstatement and back pay. Plaintiff argues that the availability of attorney's fees under 42 U.S.C. § 1988 and the unavailability of same under state law renders state procedure inadequate. This Court cannot agree. To hold otherwise would eviscerate *Parratt* and its progeny.

█ Based upon the foregoing, the Court hereby sustains Defendants' Motion for Summary Judgment (Doc. # 30) and overrules that filed by Plaintiff. The

Court has concluded that as a matter of law Plaintiff did not have a property interest in continued employment and that even assuming *arguendo* that Plaintiff had such a property interest, she was not deprived of same *without due process of law.* This resolves Plaintiff's "First Cause of Action."[5] However, Plaintiff's "Second Cause of Action," which sets forth claims for denial of equal protection and substantive due process, remains. Defendants' Motion for Summary Judgment did not address these claims. Accordingly, the Court hereby vacates the previously set trial date and directs Defendants to file a motion for summary judgment addressing the claims set forth in Plaintiff's Second Cause of Action within thirty days of notification by Plaintiff's counsel as to whether this action will continue. *See,* footnote 5, *supra.* The parties shall thereafter brief the motion in conformity with the local rules.

**4.** Plaintiff cannot question the availability of mandamus. Indeed, it is through the remedy of mandamus that Ohio courts have limited the power of appointing authorities to abolish jobs. Mandamus has created the subterfuge exception. It is this exception which is the basis for Plaintiff's claim that she had a property interest in continued employment. The Court discussed the availability of mandamus in its Decision and Entry of October 21, 1983 (Doc. # 28).

**5.** Since the dictation of this Decision and Entry, the Court has received word that the Plaintiff had become deceased. The Court notes that § 1983 actions generally survive the death of the person whose civil rights were violated. *See, Jaco v. Bloechle,* 739 F.2d 239 (6th Cir. 1984). The Court directs Plaintiff's counsel to inform both the Court and counsel for Defendants, within twenty days of the receipt of this Decision and Entry whether this action will continue or whether it will be dismissed.