FENTON ET AL., APPELLEES, *v.* ENAHARO, DIR., ET AL., APPELLANTS.

[Cite as Fenton *v.* Enaharo (1987), 31 Ohio St. 3d 69.]

(No. 86-1443—Decided June 17, 1987.)

*Jones & Sheridan Co., L.P.A.,* and *John S. Jones,* for appellees.

*Ronald J. O'Brien,* city attorney, and *Donald R. Keller,* for appellants.

*Per Curiam.* The issue presented by the within appeal is whether the court of appeals correctly concluded that "* * * the Columbus Charter is silent on the subject of layoff, so that appointing authorities in the city of Columbus may lay off employees under appropriate circumstances but that, by virtue of Sections 1 and 232 of the Columbus City Charter, appropriate provisions of the Revised Code are applicable to such layoffs, including R.C. 124.03(A) and 124.40(A)."

Section 3, Article XVIII of the Ohio Constitution empowers municipalities to enact requirements for employees which differ from those set forth within the Ohio Revised Code. See, *e.g., State, ex rel. Kohl,* v. *Dunipace* (1978), 56 Ohio St. 2d 120, 121, 10 O.O. 3d 309, 382 N.E. 2d 1358, 1359. Specifically, that section, commonly referred to as the "home-rule" amendment, provides as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This court has consistently "interpreted the above language to limit the authority of municipalities to adopt and enforce 'police, sanitary and other similar regulations' which 'are not in conflict with general laws,' but not to limit municipalities with respect to other 'powers of local self-government.' " *State, ex rel. Kohl,* v. *Dunipace, supra,* at 121, 10 O.O. 3d at 309, 382 N.E. 2d at 1359. See, also, *State, ex rel. Canada,* v. *Phillips*

(1958), 168 Ohio St. 191, 5 O.O. 2d 481, 151 N.E. 2d 722. Thus, the phrase "not in conflict with general laws" operates to modify "local police, sanitary and other similar regulations," and not the "powers of local self-government." As a result, municipalities enjoy the power "to enact local legislation, as distinguished from matters of statewide concern, without regard to general laws on the subject, except to the extent this power is limited by the Constitution itself." *Dunipace, supra,* at 121, 10 O.O. 3d at 309, 382 N.E. 2d at 1359.

Application of the foregoing principles can be illustrated by an examination of the decision in *State, ex rel. Bindas,* v. *Andrish* (1956), 165 Ohio St. 441, 60 O.O. 92, 136 N.E. 2d 43. Therein, a vacancy occurred on the Youngstown City Council resulting in the respondent's election by city council to fill the position. A *quo warranto* action was instituted in this court by the relator who claimed that the vacancy should have been filled in conjunction with the requirements contained within R.C. 731.02. At the time of the institution of the original action, the Youngstown City Charter provided:

"Section 1. * * *

"It shall have all powers * * * granted to municipalities by the Constitution or laws * * *; and all such powers * * * shall be *exercised and enforced in the manner prescribed by this charter, or* when not prescribed herein, in such manner *as shall be provided by ordinance or resolution of* the *council. In the absence of such provisions* as to any power, such power shall be exercised *in the manner* * * * *prescribed by* the *general laws* of the state, applicable to municipalities.

"Section 2. The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the city shall *have, and may exercise* all other *powers,* which, under the Constitution and laws of Ohio, it would be competent for this charter specifically to enumerate.

"* * *

"Section 5. * * * A councilman shall be an *elector of the ward* from which he is elected and of *not less than 25* years of age.

"* * *

"Section 19. *Except as otherwise provided in this charter,* the powers, duties and procedure of the council shall be as provided by the General Code." (Emphasis added.)

In contradistinction to Section 5 of the city charter, R.C. 731.02 provided as follows:

"Members of the legislative authority at large shall have resided in their respective cities, and members from wards shall have *resided in their respective wards, for at least one year next preceding their election.* Each member of the legislative authority shall be *an elector of the city,* shall *not hold any other public office or employment,* except that of notary public or

member of the state militia, and shall not be interested in any contract with the city. * * *'' (Emphasis added.)

Although respondent was a resident and elector of his ward, and was over twenty-five years of age, he was employed as a teacher in a public school system. In his original action relator argued, *inter alia,* that respondent was not qualified to fill a vacancy on city council, pursuant to R.C. 731.02, because of his public employment as a school teacher. In rejecting relator's argument, as well as the application of R.C. 731.02, it was stated at 444-445, 60 O.O. at 93-94, 136 N.E. 2d at 45:

"It may be that a state statute can be applied where a charter is silent with regard to the procedure to be followed in a particular instance, as the Youngstown charter is with respect to what shall be done when a vacancy occurs in its council. See *State, ex rel. Flask, Jr.,* v. *Collins,* 148 Ohio St., 45, 73 N.E. (2d), 195; *Dubyak, Jr.,* v. *Kovach, Mayor,* 164 Ohio St., 247, 129 N.E. (2d), 809; *State, ex rel. Sun Oil Co.,* v. *City of Euclid,* 164 Ohio St., 265, 130 N.E. (2d), 336. However, the Youngstown charter makes specific provision for the qualifications of its councilmen. There is therefore no necessity to resort to state statutes in considering what those qualifications should be. Cf. *State, ex rel. Bruestle, City Solr.,* v. *Rich, Mayor,* 159 Ohio St., 13, 31, 32, 33, 110 N.E. (2d), 778. Furthermore, by specifying that its councilmen shall have certain specific qualifications, the people of Youngstown in their charter have inferentially expressed an intention that those are to be the only qualifications required of them. *Expressio unius est exclusio alterius.*"

The Columbus City Charter, insofar as is pertinent to the instant appeal, is virtually identical to the charter provisions at issue in *State, ex rel. Bindas,* v. *Andrich.* For instance, Section 1 provides that the city of Columbus "shall have all powers * * * granted to municipalities by the constitution or laws * * *; and all such powers * * * shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council. In the absence of such provision as to any power, such power shall be exercised in the manner * * * prescribed by the general laws of the state applicable to municipalities."

Section 232 of the charter provides that "[a]ll general laws of the state applicable to municipal corporations * * * which are not in conflict with the provisions of this charter * * * shall be applicable to this city * * *."

In similar fashion to the relator in *State, ex rel. Bindas,* v. *Andrich, supra,* appellees argue that Sections 1 and 232 of the Columbus City Charter evidence an intention that R.C. 124.03(A) and 124.40(A)[1] are ap-

---

[1] R.C. 124.03 provides, in pertinent part:

"The state personnel board of review shall exercise the following powers and perform the following duties:

"(A) Hear appeals, as provided by law, of employees in the classified state service from

plicable to their appeal before the Columbus Civil Service Commission. Appellees buttress this argument by comparing R.C. 124.03(A) and 124.40(A) with Section 149-1 of the city charter. R.C. 124.40(A) empowers municipal civil service commissions to "* * * exercise all other powers and perform all other duties with respect to the civil service of such city * * * as prescribed in this chapter and conferred upon the * * * state personnel board of review. * * *" R.C. 124.03(A) confers upon the State Personnel Board of Review the power to "[h]ear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification * * *." Since Section 149-1 of the Columbus City Charter only confers jurisdiction on the civil service commission to hear appeals from employees who have been "suspended, reduced in rank or compensation or discharged,"[2] appellees argue that R.C. 124.03(A) operates to confer jurisdiction on the commission to entertain appeals concerning layoffs.

Appellees' position would possess merit, but for the fact that it is only "[i]n the absence of such provision" pertaining to the jurisdiction of the civil service commission that application of the procedure prescribed within R.C. 124.03(A) is justified. However, the charter sets forth the jurisdiction of the civil service commission and, as such, there is no occasion to apply any jurisdictional provisions under the Revised Code as a result of the "absence of" provisions. Likewise, Section 232 of the charter does not support appellees' position because R.C. 124.03(A) and Section 149-1 are conflicting, the former section providing for jurisdiction when an employee suffers a layoff while the latter section does not.

Accordingly, since the Columbus City Charter is *not* silent with

---

final decisions of appointing authorities or the director of administrative services, relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification, or refusal of the director of administrative services, or anybody authorized to perform his functions, to reassign an employee to another classification or to reclassify his position pursuant to a job audit under division (E) of section 124.14 of the Revised Code. * * *"

R.C. 124.40(A) provides in part:

"* * * The municipal civil service commission shall exercise all other powers and perform all other duties with respect to the civil service of such city, city school district, and city health district, as prescribed in this chapter and conferred upon the director of administrative services and the state personnel board of review with respect to the civil service of the state; and all authority granted to the director and the board with respect to the service under their jurisdiction shall, except as otherwise provided by this chapter, be held to grant the same authority to the municipal civil service commission with respect to the service under its jurisdiction. * * *"

[2] As was recognized in *State, ex rel. Dean,* v. *Huddle* (1975), 45 Ohio App. 2d 163, 168, 74 O.O. 2d 218, 221, 341 N.E. 2d 860, 865, a layoff is not the functional equivalent of a suspension, reduction in rank or discharge.

respect to the jurisdictional prerequisites for the civil service commission, and because R.C. 124.03(A) *conflicts with* Section 149-1 of the charter, we conclude that the ·civil service commission did not have jurisdiction over appellees' appeals. Accord *State, ex rel. Dean,* v. *Huddle* (1975), 45 Ohio App. 2d 163, 74 O.O. 2d 218, 341 N.E. 2d 860, reversed in part (1975), 45 Ohio St. 2d 234, 74 O.O. 2d 378, 344 N.E. 2d 138.[3]

For the foregoing reasons, the judgment of the court of appeals is hereby reversed.

*Judgment reversed.*

MOYER, C.J., LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

SWEENEY, J. dissenting. Appellees, Albert B. Fenton and Shirley J. Massey, assert that they have been employed by the city of Columbus for approximately fifteen years and were members of the classified civil service at the time of the present controversy. Further, they assert that in December 1983, the Director of the Department of Human Services requested that four employees in the classification of Youth Program Coordinator be certified for layoff. Pursuant to this request, the Columbus Civil Service Commission certified four provisional employees in that classification. Appellees were not among those certified for layoff. Apparently dissatisfied with the identity of the individuals selected, the director declined to follow the recommendation of the civil service commission.

Appellees further allege that in April 1984, the director forwarded to the commission a second request for layoff certification. Nearly contemporaneous with this action was a request by the director that the four individuals previously certified for layoff be reclassified. On July 16, 1984, the commission apparently reclassified five provisional employees and also entertained an oral request by the director that appellees be laid off effective July 31, 1984.

On July 25, 1984, appellees filed notices of appeal with the commission. The commission sent notice of the hearing to appellees and conducted the hearing on October 15, 1984. Pre-trial statements and oral argument were presented at the hearing and witnesses were subpoenaed. Prior to the admission of evidence, the commission granted the oral mo- .

---

[3] Our holding does not leave employees situated similarly to appellees without recourse, since an action in mandamus would be available to contest the procedure utilized to effectuate layoffs. See *State, ex rel. Dean,* v. *Huddle, supra,* at 169, 74 O.O. 2d at 221, 341 N.E. 2d at 865; *State, ex rel. Dean,* v. *Huddle* (1975), 45 Ohio St. 2d 234, 74 O.O. 2d 378, 344 N.E. 2d 138.

tion to dismiss advanced by the department, concluding that it lacked subject matter jurisdiction to hear the appeal.

This determination was affirmed by the Franklin County Court of Common Pleas but was subsequently reversed by the court of appeals.

Appellees maintain that, insofar as the Columbus City Charter and the ordinances and resolutions of Columbus City Council are silent on the issue of municipal employee layoffs, R.C. Chapter 124 is dispositive of the issue. I agree.

Section 1 of the Columbus City Charter provides as follows:

"The inhabitants of the city of Columbus, as its limits now are, or may hereafter be, shall continue to be a body politic and corporate by name the city of Columbus, and as such shall have perpetual succession. It shall have all powers that now are, or hereafter may be granted to municipalities by the constitution or laws of Ohio; and all such powers whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council. *In the absence of such provision as to any power, such power shall be exercised in the manner now or hereafter prescribed by the general laws of the state applicable to municipalities.*" (Emphasis added.)

It is difficult to conceive of a "general law" more "applicable to municipalities" than R.C. 124.40. This section of the Revised Code provides in relevant part:

"(A)  * * * The municipal civil service commission shall exercise all other powers and perform all other duties with respect to the civil service of such city, city school district, and city health district, as prescribed in this chapter and conferred upon the director of administrative services and the state personnel board of review with respect to the civil service of the state; and all authority granted to the director and the board with respect to the service under their jurisdiction shall, except as otherwise provided by this chapter, be held to grant the same authority to the municipal civil service commission with respect to the service under its jurisdiction. * * *"

The "authority" conferred upon the State Personnel Board of Review and, by virtue of R.C. 124.40, upon the municipal civil service commission is prescribed in R.C. 124.03. It provides in relevant part:

"The state personnel board of review shall exercise the following powers and perform the following duties:

"(A)  Hear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishments, *layoff,* suspension, discharge, assignment or reassignment to a new or different position classification, or refusal of the director, or anybody authorized to perform his functions, to reassign an employee to another classification or to reclassify his position pursuant to a job audit

under division (E) of section 124.14 of the Revised Code. * * *" (Emphasis added.)

In support of its disposition of the instant matter, the majority relies on Section 3 of Article XVIII of the Ohio Constitution and *State, ex rel. Kohl, v. Dunipace* (1978), 56 Ohio St. 2d 120, 10 O.O. 3d 309, 382 N.E. 2d 1358. Such reliance is misplaced. Section 3 of Article XVIII provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In quoting *State, ex rel. Kohl, v. Dunipace, supra,* the majority remarks: "This court has consistently 'interpreted the above language to limit the authority of municipalities to adopt and enforce "police, sanitary and other similar regulations" which "are not in conflict with general laws," but not to limit municipalities with respect to other "powers of local self-government." ' "

It is wholly immaterial how the municipal enactment before us is characterized. Irrespective of the type of provision involved, there simply is no conflict between the Columbus City Charter and the Revised Code. It is therefore unnecessary to speculate which enactment would prevail in the event a conflict existed.

In support of its conclusion that the code and charter provisions are incompatible, the majority employs the maxim *expressio unius est exclusio alterius.* However, application of the foregoing rule of statutory construction in the case at bar would be contrary to the unambiguous language of the Columbus City Charter. Section 2 thereof provides:

"The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof *the city shall have, and may exercise all other powers which, under the constitution and laws of Ohio, it would be competent for this charter specifically to enumerate.*" (Emphasis added.)

Moreover, Section 232 of the Columbus City Charter, read *in pari materia* with Section 2, leads to the unmistakable conclusion that any enumerated powers identified in the charter are not exclusive of those prescribed by state legislation. Charter Section 232 provides:

"All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city council, shall be applicable to this city; provided, however, that nothing contained in this charter shall be construed as limiting the power of the city council to enact any ordinance or resolution not in conflict with the constitution of the state or with express provisions of this charter."

It is abundantly clear, therefore, that the charter not only permits the application of state law to the present situation but consciously provides for its utilization.

Consequently, the fact that the city charter has failed to provide a procedure to appeal layoffs cannot be interpreted to evidence an intent on the part of the city to preclude such review. Rather, the most cursory investigation of Section 2 leads to an opposite conclusion. Where a parallel provision specifies that which would be excluded through application of *expressio unius est exclusio alterius,* there is no basis for utilization of the rule. See *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, 241, 36 O.O. 554, 558, 78 N.E. 2d 370, 376; *State, ex rel. Curtis,* v. *DeCorps* (1938), 134 Ohio St. 295, 12 O.O. 96, 16 N.E. 2d 459; *Springer* v. *Government of Philippine Islands* (1928), 277 U.S. 189, 206.

Thus, charter Section 149-1 cannot be viewed as conflicting with R.C. 124.03 where charter Sections 2 and 232 and R.C. 124.40 specifically acknowledge the application of state law to the situation here presented.[4]

As such, the Columbus Civil Service Commission possessed jurisdiction to consider the validity of the layoff and the common pleas court possessed jurisdiction pursuant to R.C. 2506.01 to further review the commission determination. Appellees have alleged that their layoff can be traced to political manipulation of city hiring practices through the circumvention of state and municipal civil service laws. On its face, the rejection by the director of the earlier layoff certification coupled with his subsequent request for certification of others is highly irregular. Moreover, his request for reclassification of the individuals previously certified for layoff — individuals with perhaps considerably less municipal experience — is a clear affront to the civil service system of the state of Ohio. The decision of the majority permits such practices to occur without an opportunity for meaningful administrative or judicial review of their legitimacy. For the foregoing reasons, I must respectfully dissent from today's holding.

DOUGLAS and H. BROWN, JJ., concur in the foregoing dissenting opinion.

---

[4] The reliance by the majority on *State, ex rel. Bindas,* v. *Andrish* (1956), 165 Ohio St. 441, 60 O.O. 92, 136 N.E. 2d 43, is likewise inapposite. In interpreting a provision in the Charter of the city of Youngstown analogous to Section 1 of the Columbus City Charter, the court stated at 445, 60 O.O. at 94, 136 N.E. 2d at 45: "To the extent that these sections deal merely with the grant or recognition of or authority to exercise or enforce powers, they obviously have no application to a problem with respect to the qualifications of a councilman." The clear implication of this language is that the "grant or recognition of or authority to exercise" the power to review a layoff is conferred by both the city charter and state law.