[Cite as *State ex rel. Robinson v. Dayton*, 2012-Ohio-5800.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO, ex rel. ROBINSON,  :
et al.

                                 :

      Plaintiffs-Appellants               C.A. CASE NO.    25245

v.                                    :        T.C. NO.   11CV2392

CITY OF DAYTON               :      (Civil appeal from
                                           Common Pleas Court)

      Defendant-Appellee         :

                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    7th    day of    December   , 2012.

. . . . . . . . . .

JEFFREY M. SILVERSTEIN, Atty. Reg. No. 0016948 and JASON P. MATTHEWS, Atty. Reg. No. 0073144, 627 South Edwin C. Moses Blvd., Suite 2-C, Dayton, Ohio 45417
      Attorneys for Plaintiffs-Appellants

JOHN J. DANISH, Atty. Reg. No. 0046639 and JOHN C. MUSTO, Atty. Reg. No. 0071512, City of Dayton Law Department, 101 W. Third Street, P. O. Box 22, Dayton, Ohio 45401
      Attorneys for Defendant-Appellee

. . . . . . . . . .

FROELICH, J.

{¶ 1} Adrienne Robinson and David Corbitt, individually and as relators, appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to the City of Dayton on their claim that they were denied due process when their civil service positions were abolished. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} Robinson and Corbitt were employed by the City of Dayton as Program Supervisors in the City's Recreation and Youth Services Department. The position of Program Supervisor is a classified civil service position under the Dayton City Charter.

{¶ 3} In 2009, the budget of the Recreation and Youth Services Department was cut significantly. That fall, the director of the department scheduled meetings with all department employees to explain and discuss budget cuts and her planned restructuring of the department. Under the director's proposed budget, every position in the department (with the exception of the executive) was eliminated, supervisors were downgraded, other positions below the supervisors were downgraded, and certain positions were turned into part-time permanent positions. These changes included the abolishment of the Program Supervisor position. Employees were encouraged by the Dayton city manager to provide input on the proposed changes and budget reduction. Corbitt and Robinson worked with other department employees and presented an alternative proposed budget to the city manager.

{¶ 4} The director's proposed budget was presented to the Dayton City Commission and approved by ordinance on February 24, 2010. On July 2, 2010, Corbitt and Robinson each received a letter notifying them to attend separate meetings with the

Dayton Civil Service Board and Human Resources Department on July 6, 2010 to discuss the abolishment of their position. Corbitt and Robinson were permitted to have an attorney present at their meetings, and Corbitt brought one to his meeting. At the meetings, Corbitt and Robinson were each given the option of either accepting a Recreation Leader II position in the Recreation and Youth Services Department or layoff. The Recreation Leader II position was a union position with a lower salary than the former Program Supervisor position. The employees were required to elect an option at the July 6 meeting. Corbitt accepted the Recreation Leader II position; Robinson chose to be laid off. The Program Supervisor position was abolished effective July 12, 2010.

{¶ 5} Robinson and Corbitt attempted to appeal the abolishment of the Program Supervisor position to the Dayton Civil Service Board. On July 13, 2010, the Board notified them that the Board "had no authority" to hear their appeals under Dayton's Civil Service Rules.

{¶ 6} In March 2011, Robinson and Corbitt, individually and as relators, filed suit in the common pleas court, alleging that the City abolished their positions without affording them due process, as required by Article I, Section 16 of the Ohio Constitution. They sought reinstatement to their positions by means of a writ of mandamus, back pay, and compensatory and punitive damages.

{¶ 7} The parties filed cross-motions for summary judgment. In their motion, Robinson and Corbitt claimed that they had a property interest in their positions, but were given neither a pre-deprivation opportunity to respond to the abolishment nor a post-deprivation procedure to challenge the abolishment. They argued that they were

entitled to the protections provided by R.C. Chapter 124, which included a post-deprivation evidentiary hearing before the Civil Service Board under R.C. 124.03. In response to these arguments, the City asserted that Ohio law does not provide a right to a pre-abolishment hearing, and that R.C. Chapter 124 does not apply to appeals before the Dayton Civil Service Board.

{¶ 8} In its motion for summary judgment, the City further argued that a City may abolish positions for budgetary reasons without providing affected employees a hearing. It emphasized that the abolishment was conducted by legislative action of the Dayton City Commission and that the Dayton Civil Service Board lacks the authority to overturn such legislative actions. The City further asserted that, if Robinson and Corbitt had a right to an appeal before the Civil Service Board, their claims were barred for failure to exhaust their administrative remedies. Moreover, the City claimed that Robinson and Corbitt actually received all of the protections of a pre-deprivation hearing, even though none was required.

{¶ 9} In a reply memorandum, Robinson and Corbitt asserted that they had no administrative remedies to exhaust, because the Dayton Civil Service Board did not perform any quasi-judicial function. They also reiterated that R.C. Chapter 124 applied to cities and that the City denied them post-deprivation due process. (They did not reassert their argument that they were denied pre-deprivation due process.)

{¶ 10} The trial court granted the City's motion for summary judgment and denied Robinson and Corbitt's motion for summary judgment. First, the court found that the facts established that the employees had been provided an opportunity to be heard prior to the abolishment of their positions. Second, the court rejected the argument that the City was

required to comply with R.C. Chapter 124. The court reasoned that "[t]he City of Dayton has adopted a charter which the Ohio Supreme Court has held to create a separate civil service system which supersedes Ohio general state civil service Laws. * * * Dayton's civil service rules were adopted by legislative action and do not require a post-abolishment hearing in this case at bar." The court further agreed with the City that the Dayton Civil Service Board did not have the jurisdiction to overturn the legislative acts of the Dayton City Commission.

{¶ 11} Robinson and Corbitt appeal the trial court's judgment.

II.

{¶ 12} Robinson and Corbitt raise one assignment of error, namely that "[t]he trial court erred in finding that Appellants had no right to a post-deprivation due process hearing."

{¶ 13} Robinson and Corbitt's argument is two-fold. First, they claim that they had a property interest in their Program Supervisor positions, in accordance with *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). They assert that they therefore could not be removed from that position without being afforded due process of law, and that the denial of such a hearing violated Section 16, Article I of the Ohio Constitution. Second, they assert that they were entitled to appeal rights under R.C. Chapter 124, which addresses the abolishment of positions held by classified civil servants. Specifically, they state that they were entitled to a post-deprivation civil service hearing under R.C. 124.03 and 124.321.

A. Constitutional Right to Due Process

{¶ 14}   It is undisputed that the Program Supervisor position was a classified civil service position.   Classified civil servants in Ohio possess property rights in their continued employment.   *Loudermill*, 470 U.S. at 539; *Ohio Assn. of Pub. School Emp., AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. of Educ.*, 68 Ohio St.3d 175, 624 N.E.2d 1043 (1994).

{¶ 15}   In *Loudermill*, two school district employees (a security guard and a bus mechanic) from two different school districts in Ohio brought suit against their respective boards of education, claiming that they were deprived of their civil service positions without due process.   After concluding that the employees had a property interest in their continued employment, the Supreme Court ruled that the Due Process Clause of the United States Constitution requires "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected interest in his employment."   *Id.* at 542.   The Court held that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute."   *Id*. at 547-48.

{¶ 16}   While *Loudermill* establishes a general rule that classified civil servants in Ohio have a constitutional right to procedural due process upon discharge, numerous federal and state courts have recognized that the due process obligations articulated in *Loudermill* do not apply when an employee's position is eliminated as a result of a bona fide layoff, reduction in force, or reorganization.   *E.g*., *Ditty v. Minneapolis*, Civ. No. 11-109 (MJD/FLN), 2012 WL 3870573 (D.Minn. Sept. 6, 2012), citing *Rodriguez–Sanchez v. Municipality of Santa Isabel,* 658 F.3d 125, 130 (1st Cir.2011) ("[P]re-termination hearings are not required by due process where a bona fide government reorganization plan bases

dismissals on factors unrelated to personal performance.") and *Gunville v. Walker*, 583 F.3d 979, 989 (7th Cir.2009) ("[D]ue process is not implicated when government employees are laid off due to a reorganization."). *See also Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677, 685 (4th Cir.1994) (plaintiff "enjoyed no property right in the continued existence of his job and consequently his position could be abolished by the legislature without notice and a hearing."); *Perkimen Tp. v. Mest*, 522 A.2d 516, 520 (Pa.1987) (abolishment of a municipal job is presumed to be in good faith; legislative action is subject to judicial review only if abolishment was pretense or subterfuge); *Kavakich v. Bentleyville Borough*, Case No. 06-1114, 2008 WL 2563377, *3 (W.D.Pa. June 24, 2008) ("When a termination is directed at positions rather than individuals, the hearing mandated by the Fourteenth Amendment's due process protection need not be held."); *Franks v. Magnolia Hosp.*, 888 F.Supp. 1310 (N.D.Miss.1995).

**{¶ 17}** Some federal and state appellate courts in Ohio have adopted this view. *See, e.g., Chaney v. Potsdam*, 2004 WL 1532252 (6th Cir. 2004), fn. 6 ("Ohio law clearly provides that a municipality may abolish positions for budgetary reasons without providing the affected employees with a hearing."); *Graham v. Triway Bd. of Educ.*, 82 Ohio App.3d 34, 610 N.E.2d 1185 (9th Dist.1992). As stated by the Ninth District:

> It is well settled that where an employee who possesses a property interest in employment is dismissed for cause, due process requires notice and an opportunity for hearing prior to the dismissal. Some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision since dismissals for cause often involve factual

disputes.

Where such an employee's position has been abolished, however, different considerations apply. It has been held that due process does not require a pretermination hearing in such a situation because the employee does not need an opportunity to present evidence on job performance. The employee's conduct is of no relevance to the decision to abolish the position. Furthermore, there is no risk that the employee will suffer stigma because there has been no discharge for cause.

* * * An employee's challenge to such an action * * * is more appropriately addressed in a post-abolishment proceeding in court.

(Citations omitted.) *Graham* at 38-39.

{¶ 18} This position was also expressed in *Ryman v. Reichert*, 604 F.Supp. 467, 471 (S.D.Ohio 1985), a pre-*Loudermill* case cited by the City. In *Ryman*, the district court recognized that, "[u]nder [Ohio] law, an appointing authority may abolish a position with the concomitant result that an employee loses her job, subject to the one important limitation that the appointing authority may not abolish a position as a mere subterfuge to rid itself of a particular employee." *Id*. at 468. Upon review of the parties' evidence, the court concluded, as a matter of law, that the abolishment of the plaintiff's position as a desk officer with a police department was not subterfuge by the township board of trustees. The district court further concluded that *Loudermill* (which was then on appeal to the Supreme Court from the Sixth Circuit) was distinguishable, because Ryman's case involved an abolishment, not a discharge. The court noted that there was no stigma attached to an

abolishment, that the defendants did not purport to act on the basis of Ryman's job performance, and that the decision to abolish Ryman's job was done legislatively, i.e., it was not an administrative decision. *Id.* at 471-472. The court determined that Ryman did not suffer a property deprivation without due process of law.

{¶ 19} We find these cases to be persuasive. A civil service employee has a property interest in his or her continued employment at a position, but not a property interest in *the existence of* his or her position. *E.g.*, *Christian v. Cecil County*, 817 F.Supp. 1279, 1284 (D.Md.1993). And unlike termination cases, where the employee's personal qualities and/or job performance are relevant and subject to questions of fact, bona fide job abolishments are directed toward the position (not the employee), do not carry a stigma, and are not administrative decisions. Absent evidence (or even an allegation) that the abolishment of the Program Supervisor position was a pretext or sham to oust Robinson and Corbitt from their positions, the City of Dayton was entitled to abolish that position without affording them due process.[1]

---

[1] At oral argument, the parties agreed that mandamus was an appropriate remedy if the abolishment of an employee's position was mere subterfuge to terminate the affected employee.

{¶ 20} In this case, Robinson and Corbitt did not allege subterfuge on the part of the City and certainly did not create a genuine issue of material fact that the reorganization of the Recreation and Youth Services Department was necessitated by budgetary and economic circumstances. The record contains undisputed evidence that the City's income tax revenues declined drastically during the 2009 recession and, as a result, nearly every department in the City was tasked with cutting its budget. Brent McKenzie testified in his deposition that the Dayton city manager, along with the Office of Management and Budget, determined how much each department could spend and then those numbers were given to the departments, which had to comply; the Recreation and Youth Services Department was informed that it needed to reduce its budget by $496,000. Although Robinson and Corbitt disagreed with the department reorganization plan that was prepared in response to the economic crisis and acted on by the City Commission, they have not alleged, argued, or presented evidence to refute the existence of the economic hardship and the City's need to reduce its budget, including the budget of the Recreation and Youth Services Department. Given the record, Robinson and Corbitt had no constitutional rights under *Loudermill* to a pre-deprivation or post-deprivation hearing.[2]

{¶ 21} Robinson and Corbitt have claimed a constitutional deprivation under the Ohio Constitution. The Due Process Clause of the Ohio Constitution is generally coextensive with the due process rights provided under the Fourteenth Amendment to the

---

[2] Robinson and Corbitt do not now claim that they were denied their right to a pre-deprivation hearing. Even if they had raised that issue on appeal, we would agree with the trial court that the employees had been provided an opportunity to be heard prior to the abolishment of their positions. The November 2009 departmental meetings and the employees' July 2, 2010 meeting with the Dayton Civil Service satisfied any pre-deprivation due process responsibilities of the City.

United States Constitution. *See Youngstown v. Traylor*, 123 Ohio St.3d 132, 2009-Ohio-4184, 914 N.E.2d 1026, ¶ 8; *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 90, quoting *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941). Accordingly, Robinson and Corbitt's rights to due process under the Ohio Constitution also were not violated.

B. Right to Post-Deprivation Hearing under R.C. Chapter 124

{¶ 22} Robinson and Corbitt further claim that they had a right to a hearing on the abolishment of their positions under R.C. Chapter 124.[3]

{¶ 23} Section 10, Article XV of the Ohio Constitution provides: "Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision." Ohio's civil service scheme is thus "embedded in the Ohio Constitution," and R.C. Chapter 124 was enacted to effectuate the civil service system. *Chubb v. Ohio Bur. of Worker's Comp.*, 81 Ohio St.3d 275, 277, 690 N.E.2d 1267 (1998).

{¶ 24} In general, "civil service" includes "all offices and positions of trust or employment in the service of the state and in the service of the counties, *cities*, city health districts, general health districts, and city school districts of the state." (Emphasis added.) R.C. 124.01(A). R.C. 124.11 divides employees into the classified and unclassified service, and R.C. Chapter 124 provides different statutory protections depending on an employee's

---

[3] At oral argument, Robinson and Corbitt's counsel focused on the employees' right to pursue relief through a mandamus action. For sake of completeness, we will address appellants' argument regarding R.C. Chapter 124 as briefed.

classification.

{¶ 25} Ohio's general civil service scheme recognizes that an appointing authority may determine that it is necessary to reduce its workforce either through layoffs or the abolishment of positions. R.C. 124.321. Under R.C. 124.321(D)(1), positions may be abolished due to "reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work." *Id.* R.C. 124.321(D) further provides, in part:

(2)(a) Reasons of economy permitting an appointing authority to abolish a position and to lay off the holder of that position under this division shall be determined at the time the appointing authority proposes to abolish the position. The reasons of economy shall be based on the appointing authority's estimated amount of savings with respect to salary, benefits, and other matters associated with the abolishment of the position, except that the reasons of economy associated with the position's abolishment instead may be based on the appointing authority's estimated amount of savings with respect to salary and benefits only, if:

(i) Either the appointing authority's operating appropriation has been reduced by an executive or legislative action, or the appointing authority has a current or projected deficiency in funding to maintain current or projected levels of staffing and operations; and

(ii) In the case of a position in the service of the state, it files a notice of the position's abolishment with the director of administrative services within one year of the occurrence of the applicable circumstance described in

division (D)(2)(a)(i) of this section.

(b) The following principles apply when a circumstance described in division (D)(2)(a)(i) of this section would serve to authorize an appointing authority to abolish a position and to lay off the holder of the position under this division based on the appointing authority's estimated amount of savings with respect to salary and benefits only:

(i) The position's abolishment shall be done in good faith and not as a subterfuge for discipline.

(ii) If a circumstance affects a specific program only, the appointing authority only may abolish a position within that program.

(iii) If a circumstance does not affect a specific program only, the appointing authority may identify a position that it considers appropriate for abolishment based on the reasons of economy.

{¶ 26} A classified employee may appeal a layoff, or a displacement that is the result of a layoff, to the State personnel board of review, R.C. 124.328, and the State personnel board of review is expressly authorized to hear appeals by classified employees of final decisions relating to job abolishments and layoffs, R.C. 124.03. The decision of the State personnel board of review may be appealed to the court of common pleas in accordance with R.C. 119.12. *Id.*

{¶ 27} R.C. 124.40 provides for the creation of municipal civil service commissions, which, as to that municipality, generally exercise the powers and perform the duties of the State's director of administrative services and the State's personnel board of

review.[4]  Municipal civil service commissions have the authority to promulgate rules not inconsistent with R.C. Chapter 124.  R.C. 124.40; *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, ¶ 13.

{¶ 28}  The City of Dayton asserts that R.C. Chapter 124 does not apply to it, because it is a charter city under the "home rule" provisions of the Ohio Constitution. Sections 3 and 7, Article XVIII of the Ohio Constitution provide:

> Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. [Section 3]

> Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article,

---

[4]  Specifically, R.C. 124.40 provides, in part:

The municipal civil service commission shall prescribe, amend, and enforce rules not inconsistent with this chapter for the classification of positions in the civil service of the city * * *; for examinations for and resignations from those positions; for appointments, promotions, removals, transfers, layoffs, suspensions, reductions, and reinstatements with respect to those positions; and for standardizing those positions and maintaining efficiency in them.  The commission's rules shall authorize each appointing authority of a city * * * to develop and administer in a manner it devises an evaluation system for the employees it appoints. The commission shall exercise all other powers and perform all other duties with respect to the civil service of the city * * *, as prescribed in this chapter and conferred upon the director of administrative services and the state personnel board of review with respect to the civil service of the state; and all authority granted to the director and the board with respect to the service under their jurisdiction shall, except as otherwise provided by this chapter, be held to be granted to the commission with respect to the service under its jurisdiction.  The procedure applicable to reductions, suspensions, and removals, as provided for in section 124.34 of the Revised Code, shall govern the civil service of cities.

exercise thereunder all powers of local self-government. [Section 7]

{¶ 29}  Pursuant to these home rule powers, Dayton created a charter, which grants broad powers to the City and includes provisions establishing the City's civil service.  Dayton City Charter, Article X (Sections 93-107).  Under Section 101 of the Charter, employees in the City's classified service who are "suspended, reduced in rank, or dismissed from a department by the director of that department or the City Manager" may appeal the decision to the Civil Service Board.  The Charter does not expressly address reductions in force due to layoffs or the abolishment of positions.  Although Dayton's Civil Service Rules are not in the record, the City acknowledges that they do not provide an appeal for job abolishment.

{¶ 30}  "Under the principles of home rule prescribed by Section 3, Article XVIII of the Ohio Constitution, in matters of local self-government, when there is a conflict between a municipal charter provision and a statute, the charter provision prevails where (1) the conflict appears by the express terms of the charter, and not by mere inference, and (2) the charter clearly and expressly states the areas where the municipality intends to supersede and override general state statutes."  *Blauvelt v. Hamilton*, 12th Dist. Butler No. CA2008-07-174, 2009-Ohio-2801, ¶ 24, citing *State ex rel. Bardo v. Lyndhurst*, 37 Ohio St.3d 106, 524 N.E.2d 447 (1988) and *State ex rel. Regetz v. Cleveland,* 72 Ohio St.3d 167, 648 N.E.2d 495 (1995).  "As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of section 10 of article 15, and do not conflict with any other provisions of the Constitution, they are valid, and under the cases referred to discontinue the general law on the subject as to that municipality."  *State ex rel. Lentz v. Edwards*, 90 Ohio St. 305, 310, 107 N.E.768 (1914).

{¶ 31} "In the absence of express language in a charter showing that it conflicts with the statutes, it is the duty of the courts to harmonize the provisions of the charter with the provisions of the statute relating to the same matter." *Bardo*, supra, limited by *State ex rel. Bednar v. N. Canton*, 69 Ohio St.3d 278, 631 N.E.2d 621 (1994). Thus, "the general civil service laws as codified within R.C. Chapter 124 *et seq.* will apply where the charter provisions are silent or where the charter has adopted the language of the particular state statute." *Jacomin v. Cleveland*, 70 Ohio App.3d 163, 165, 590 N.E.2d 846 (8th Dist.1990). However, express charter provisions will prevail over conflicting state civil service provisions as found within the Revised Code. *Id*.

{¶ 32} The City relies on several cases to support its position that Dayton's Charter provisions "establish a separate civil service system that supersedes and annuls the general state civil service law." In *Lentz*, appointed members of the Dayton Civil Service Commission who were appointed under state statutory provisions claimed that other individuals appointed under Dayton's new City Charter had "usurped" their positions. The Ohio Supreme Court upheld the Dayton Charter provisions, recognizing that "[t]he manner of regulating the civil service of a city is peculiarly a matter of municipal concern." *Id*. at 309.

{¶ 33} In *Fraternal Order of Police Captain John C. Post Lodge No. 44 v. Dayton*, 2d Dist. Montgomery No. 10703, 1988 WL 87608 (Aug. 18, 1988), we addressed whether the City had to a duty to provide promotion examinations for police officers in accordance with R.C. 124.44. We held that R.C. 124.44 did not apply, stating: "It is reasonably clear from Sections 1 and 2 of the Dayton charter that the residents of Dayton granted the City of Dayton all possible powers of local self government except as may be limited by other charter provisions. It follows that the civil service provisions of the charter can only limit, and not expand, the powers of local

self government in the civil service area." *Id*. at *4.

{¶ 34} Finally, the City emphasizes *Fenton v. Enaharo*, 31 Ohio St.3d 69, 509 N.E.2d 67 (1987), which addressed whether employees for the City of Columbus who were laid off from their positions were entitled to procedural protections provided by R.C. Chapter 124. As in the case before us, the Columbus City Charter conferred jurisdiction on the civil service commission to hear appeals from employees who had been "suspended, reduced in rank or compensation or discharged." The Columbus Civil Service Commission concluded that it lacked jurisdiction to entertain an appeal contesting a layoff, and the trial court affirmed. On appeal, the court of appeals concluded that the Columbus City Charter was silent with respect to layoffs and, thus, the civil service commission had jurisdiction to hear the appeal under R.C. 124.03(A) and R.C. 124.40(A).

{¶ 35} The Ohio Supreme Court agreed with the civil service commission and trial court and reversed the court of appeal's judgment. It stated that "the charter sets forth the jurisdiction of the civil service commission and, as such, there is no occasion to apply any jurisdictional provisions under the Revised Code as a result of the 'absence of' provisions." *Fenton* at 73. It further found that R.C. 124.03(A) and the charter conflicted, because "the former section provid[es] for jurisdiction when an employee suffers a layoff while the latter section does not." *Id*. The supreme court thus concluded that the Columbus City Charter was not "silent" as to the jurisdictional prerequisites for the civil service commission, and the Columbus civil service commission did not have jurisdiction over the employees' appeal of their layoffs. *Id*. at 73-74.

{¶ 36} We find *F.O.P v. Dayton* and *Fenton* to be dispositive. The Dayton City Charter granted the City broad powers, including the power to establish its civil service. In setting forth

the Civil Service Board's jurisdiction over appeals, the charter limited the Board's jurisdiction to appeals by employees "in the classified service who are suspended, reduced in rank, or dismissed from a department by the director of that department of the City Manager." Facing like circumstances in *Fenton*, the supreme court has held that such a charter provision conflicts with the statutory provision concerning appeals from layoffs and abolishment of positions, and that the charter provision prevails over R.C. 124.03(A) and R.C. 124.40(A). In accordance with *Fenton*, we conclude that the Dayton Civil Service Board did not have jurisdiction to hear Robinson and Corbitt's appeals from the abolishment of the Program Supervisor position.

{¶ 37} Robinson and Corbitt cite several opinions since *Fenton*, in which an appellate court applied R.C. Chapter 124, despite the fact that the municipality at issue was a charter city. *See Manlou v. Cleveland Civil Serv. Commn.*, 8th Dist. Cuyahoga No. 85213, 2005-Ohio-2850; *Zupp v. Columbus Mun. Civil Serv. Commn.*, 187 Ohio App.3d 614, 2010-Ohio-2614, 933 N.E.2d 281 (10th Dist.).

{¶ 38} In *Manlou*, the Eighth District concluded that Cleveland's Civil Service Rule 8.20, which governs layoffs, did not conflict with R.C. 124.321. *Id*. at ¶ 17. It reasoned that the rule "appears to adopt the spirit of R.C. 124.321 relative to layoffs, and remains silent in regard to other actions, such as filing the statement of rationale. Thus, we reject the City's argument that R.C. 124.321 is inapplicable to this case." *Id.* Because Cleveland's civil service rules included rules regarding layoffs and those rules followed the state statutory provisions, we find *Manlou* to be distinguishable.

{¶ 39} *Zupp* is also distinguishable. In that case, classified employees sought to exercise bumping rights after they were laid off; the City of Columbus concluded that, under the

collective bargaining agreement with the City, the employees could not bump less senior bargaining-unit employees. The city charter provided for an appeal to the civil service commission for classified employees who were "discharged or reduced in rank or compensation." The employees were entitled to an appeal because such employees, under *Zupp*, included classified employees who were subject to layoff. We do not agree that a layoff is the equivalent of a discharge or other disciplinary action. *Fenton*, 31 Ohio St.3d at 73, fn.2 ("a layoff is not the functional equivalent of a suspension, reduction in rank or discharge"). We therefore disagree with *Zupp*'s conclusion that a city's appeal procedures for discharges and reductions in rank or pay provide appellate rights for an employee whose position has been abolished.

{¶ 40} Robinson and Corbitt's assignment of error is overruled.

{¶ 41} In short, we agree with the trial court that Robinson and Corbitt's constitutional right to due process was not violated when their positions as Program Supervisor were abolished by the Dayton City Commission. Moreover, they did not have a right to appeal the abolishment to the Dayton Civil Service Board as the Board did not have jurisdiction over appeals from layoffs or the abolishment of positions. Accordingly, the trial court properly granted the City's motion for summary judgment and overruled the employees' motion for summary judgment.

III.

{¶ 42} The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and DONOVAN, J., concur.

Copies mailed to:

Jeffrey M. Silverstein
Jason P. Matthews

John J. Danish
John C. Musto
Hon. Barbara P. Gorman