THE STATE, EX REL. HALAK, MAYOR, APPELLANT, *v.*
SKOREPA ET AL., APPELLEES.

[Cite as State, ex rel. Halak, *v.* Skorepa (1983), 6 Ohio St. 3d 97.]

(No. 82-1583—Decided July 27, 1983.)

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A.,* and *Mr. Bernard J. Stuplinski,* for appellant.

*Climaco, Seminatore, Lefkowitz & Co., L.P.A.,* and *Mr. Paul S. Lefkowitz,* for appellees.

*Per Curiam.* The duties of the Mayor and City Council with respect to

making appointments are set forth in Section (b), Article IX of the North Royalton City Charter, which provides, in part:

"The Mayor shall appoint all directors, administrators and heads of departments by the first regular Council meeting in the month of January following the Mayor's election to office. Council shall have thirty (30) days to approve or disapprove the appointments. *Disapproval by Council shall be allowed when an appointee fails to meet the qualifications of the position established by Charter or by Ordinance.* * * *" (Emphasis added.)

The qualifications for the position of law director are set forth in Section (b), Article VIII of the Charter, as follows:

"The Director of Law shall be an attorney-at-law duly admitted to the practice of law before the Supreme Court and other Courts of the State of Ohio and have been engaged in the actual practice of law for a minimum of five (5) years and two (2) years experience in the field of municipal law."

The present controversy arises due to the fact that the Charter does not define "experience in the field of municipal law." Generally, "municipal law" is defined as, "* * * those laws which pertain to towns, cities and villages and their local government." (Citation omitted.) Black's Law Dictionary (5 Ed. 1979), at 918.

Appellant argues that the experience possessed by his appointee amounts to experience in the field of municipal law. At the time that they disapproved the appointment, appellees did not specify the experience they believed the appointee was lacking. Appellees, however, argue that "experience in the field of municipal law" includes experience in the following areas: drafting legislation, civil service matters, civil rights litigation, Section 3, Article XVIII, Ohio Constitution (the Home Rule Amendment), public employee labor relations and negotiations, taxpayer actions, extraordinary writs, declaratory judgment actions, injunctive relief and public employee pension funds.

Recognizing the diverse and ever-expanding role of municipal government, we find that the experience possessed by appellant's appointee as well as the areas of expertise mentioned by appellees are properly includable within the definition of "experience in the field of municipal law." However, we cannot agree that the definitions urged by either side to this controversy are exclusive. In addition to experience already mentioned herein, experience in the areas of public utility law, state and federal fund-sharing programs, municipal bond law, special assessments, annexation, regulation of local trade and industry, transportation and environmental control are also properly includable within the definition of "experience in the field of municipal law." In fact, the various bodies of law which comprise the "field of municipal law" are so vast that it would probably be easier to cite what is not the "field of municipal law" than what is. Without further definition in the Charter, we can ascertain no guidelines for its application.

In *Dayton, ex rel. Scandrick,* v. *McGee* (1981), 67 Ohio St. 2d 356 [21 O.O.3d 225], we reviewed a municipality's procedure for awarding contracts,

and concluded that the city abused its discretion and acted arbitrarily in following a procedure without established guidelines for its application. In addressing the need for appropriate standards, we stated at 360:

"The evil here is not necessarily that 'resident bidders are preferred but that there are absolutely no guidelines or established standards for deciding by how 'many percentages' a bid may exceed the lowest bid and yet still qualify as the 'lowest and best' bid. Absent such standards, the bidding process becomes an uncharted desert, without landmarks or guideposts, and subject to a city official's shifting definition of what constitutes 'many percentages.' Neither contractors nor the public are well served by such a situation.

"While municipal governing bodies are necessarily vested with wide discretion, such discretion is neither unlimited nor unbridled. The presence of standards against which such discretion may be tested is essential; otherwise, the term 'abuse of discretion' would be meaningless."

The need for established guidelines is well-illustrated herein. In adopting these charter provisions, it is apparent that the people of North Royalton intended first, that the qualifications for the position of law director be fixed and determined by the Charter. Secondly, the Mayor was granted the power to appoint a law director having the specified qualifications. Third, City Council was granted the power to disapprove an appointment only where the appointee does not meet the specified qualifications.

Absent any guidelines for determining what constitutes the "field of municipal law," Council is free to define that term differently with each appointment it considers, and thus circumvent the Charter's limitation upon its power to disapprove appointments.

For these reasons, we find that the qualification is arbitrary and enlarges upon the powers granted to Council by the Charter, and therefore, its application herein by appellees to disapprove the appointment was an abuse of discretion. The only qualifications remaining which are capable of enforcement are that the appointee be "admitted to practice law before the Supreme Court and other Courts of the State of Ohio and have been engaged in the practice of law for a minimum of five (5) years." It is agreed that the designated appointee meets these qualifications, and thus, there are no grounds upon which to sustain appellees' disapproval of the appointment.

Accordingly, the judgment of the court of appeals is reversed and the writ is allowed.

*Judgment reversed*
*and writ allowed.*

W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., and HOLMES, J., dissent.