THE STATE, EX REL. WILLIAMSON, *v.* CUYAHOGA COUNTY BOARD OF ELECTIONS ET AL.

[Cite as State, ex rel. Williamson, *v.* Cuyahoga Cty. Bd. of Elections (1984), 11 Ohio St. 3d 90.]

(No. 84-519—Decided June 7, 1984.)

*Mr. David A. Williamson, pro se.*

*Messrs. Benesch, Friedlander, Coplan & Aronoff, Mr. Avery S. Cohen* and *Mr. Kenneth A. Bravo,* for respondent board of elections.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. John T. Williams,* for respondent Secretary of State.

*Mr. William E. Mahon,* for intervening respondent Arthur P. Lambros.

*Per Curiam.* We must first decide whether the votes cast for Lambros at the November 8, 1983 election may be counted. In *Spangler, supra,* we held that Lambros was not an eligible candidate at the time of the election. The temporary restraining order issued by the United States District Court was ultimately dissolved and therefore has no effect on the *Spangler* ruling. Thus, the only eligible candidate on the ballot was relator and only his votes may be counted.

We reject as unfounded the Secretary of State's contention that Williamson must have received a greater number of votes than Lambros in order to win the election. The authority relied upon by respondent is misplaced and in-

appropriate to the facts under review. Respondent correctly cites the rule that " '[w]here the candidate receiving the highest number of votes is ineligible to election, the candidate receiving the next highest number of votes for the same office is not elected. Only the *eligible candidate* who receives the highest number of votes for the office for which he stands is elected to such office.' " (Emphasis added.) *State, ex rel. Halak,* v. *Cebula* (1977), 49 Ohio St. 2d 291, 293 [3 O.O.3d 439]. See, also, *State, ex rel. Haff,* v. *Pask* (1933), 126 Ohio St. 633, paragraph three of the syllabus. This rule applies only where, at the time of the election, there was more than one eligible candidate but the candidate receiving the highest number of votes was disqualified or otherwise unable to take office following the election. In the case at bar, relator was the only eligible candidate and respondents are under a clear legal duty to count only the votes cast for relator in the November 8, 1983 election for law director.

The second issue raised is whether respondents may be compelled by way of mandamus to certify relator as the winner of the election. Relator argues that since he was the only candidate, he must be certified as the duly elected law director. Respondents assert that relator may not be certified as the duly elected law director unless it is shown that he received the number of votes required by Section 6.01, Article VI of the Charter of the city of Brook Park which provides in relevant part:

"* * * Where there is only one candidate for the office of Law Director at the election in the year of 1979 or any subsequent election for said office, the candidate must receive at least fifty percent (50%) plus one (1) of the total votes cast in the *General Election.* [Emphasis added.]

"In the event that no person is elected to the office of Law Director, due to failure to receive the required number of votes or other cause, the Mayor, with the concurrence of a majority vote of Council, shall appoint the Law Director * * *."

This provision is ambiguous because it fails to clearly set forth the basis for determining whether a candidate has obtained the majority required. This ambiguity arises, first, because the charter does not define the words *"General Election."* Section 11.02, Article XI of the Charter of the city of Brook Park provides:

"A general municipal election for the purpose of the election of officers provided for in this Charter shall be held on the first Tuesday after the first Monday in November in each odd numbered year. Elections so held shall be known as *regular municipal elections.* All other elections held under the provisions of this Charter or as required by law shall be known as special municipal elections." (Emphasis added.)

Thus, under the charter, the election held on November 8, 1983 was not a *general election.*

Moreover, we cannot ascertain whether Section 6.01 requires a candidate to obtain a majority of all votes cast in the election, all votes cast for law

director or those cast in some other race. These ambiguities are not resolved by other provisions of the charter.

Section 11.07, Article XI of the Brook Park City Charter provides:

"Except as otherwise provided in this Charter, all elections shall be held and conducted and the results thereof ascertained and certified as provided by the general laws of the State of Ohio and by the election authorities therein provided for. * * *."

If the general law applied, declaration of the winner of the election would be governed by R.C. 3505.33 under which the candidate for each office who "received the largest * * * number of votes * * *" is elected to such office.

By failing to define the terms used in Section 6.01 of the charter, the city has failed to provide guidelines for the manner in which that provision is to operate. Accordingly we find that provision unenforceable. *State, ex rel. Halak,* v. *Skorepa* (1983), 6 Ohio St. 3d 97, 99.

The writ is allowed and respondents are ordered to count only the votes cast for relator and to declare relator the duly elected law director as required by R.C. 3505.33.

*Writ allowed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, LOCHER and HOLMES, JJ., dissent.

LOCHER, J., dissenting. Since I am of the opinion that Section 6.01, Article VI, of the Charter of the city of Brook Park is unambiguous and controlling in this matter, I must dissent.

"This court has consistently held that, under the home-rule provisions of Article XVIII of the Constitution, a municipality may adopt for municipal elections a method of selecting municipal officers different from the method of elections otherwise provided for." *State, ex rel. Sherrill,* v. *Brown* (1951), 155 Ohio St. 607, 608 [45 O.O. 16]. In giving effect to the terms of a city charter, we should interpret the wording in a reasonable manner. In this case, since Brook Park did not specifically define "general election" in its charter, the only reasonable interpretation is that a "regular municipal election" as set forth in Section 11.02, Article XI is identical to a general election. The exclusive wording of that section makes another interpretation inconceivable:

"A *general municipal election* for the purpose of the election of officers provided for in this Charter shall be held on the first Tuesday after the first Monday in November in each odd numbered year. Elections so held shall be known as *regular municipal elections.* All other elections held under the pro-

visions of this Charter or as required by law shall be known as special municipal elections." (Emphasis added.)

Since a general election could not also be a "special" election, it must therefore be a regular election.

Relator argues that the "50% plus one" requirement of Section 6.01, Article VI was meant to apply only to the case of one candidate appearing on the ballot, where "voter fallout" is often a problem. Relator fails to recognize, however, that he is in effect unopposed since intervenor Lambros was ruled not to be a candidate. Votes cast for Lambros by virtue of the temporary reinstatement of his name to the ballot are votes *against relator*. This is a situation intended to be covered by Section 6.01, to ensure that the candidate receives more "yes" votes than "no" and "abstain" votes.

Accordingly, I would deny the writ and permit the Secretary of State to order that all votes cast be counted, in conformity with the clear reading of the Brook Park City Charter.

W. BROWN and HOLMES, JJ., concur in the foregoing dissenting opinion.