THE STATE, EX REL. TAYLOR, APPELLANT AND CROSS-APPELLEE, *v.* LUCAS COUNTY BOARD OF ELECTIONS, APPELLEE; BIHN, INTERVENING APPELLEE AND CROSS-APPELLANT.

(No. L-87-385—Decided January 22, 1988.)

*William M. Connelly* and *Betty F. Coggin,* for appellant and cross-appellee.

*R. Michael Frank* and *Anthony Pizza,* prosecuting attorney, for appellee.

*Nick Batt,* for intervening appellee and cross-appellant.

GLASSER, J. This cause is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.

An overview of the procedural history between the parties will facilitate a better understanding of the issues before the court. On November 2, 1987, plaintiff-appellant, Mary A.

Taylor, filed a complaint in mandamus in the Court of Common Pleas of Lucas County, alleging that intervening defendant-appellee, Sandy Bihn, was ineligible to run for the office of Clerk-Auditor of the city of Oregon, Ohio, in the general election of November 3, 1987. The relief requested was a writ ordering that defendant-appellee Lucas County Board of Elections void and refuse to count any votes cast for Bihn and refuse to certify the abstract of the results of votes cast for Bihn. On the afternoon of November 2, 1987, a hearing was held before the trial court, stipulations were made as to certain facts and some election records were entered into evidence. At this same hearing, Bihn was represented by counsel who moved for leave to intervene. Said motion was subsequently granted by the court. Briefs as to the legal issues involved were submitted for the consideration of the court by Taylor, Bihn and the board.

Another hearing was held November 12, 1987. On November 18, 1987, based on the arguments of counsel, the two hearings and the pleadings and various briefs of counsel, the trial court issued a decision and journal entry ordering the mandamus action dismissed. Thereafter, both Bihn and Taylor appealed to this court. Appellant's assignments of error are specifically addressed below. Appellee's cross-appeal, however, has been presented to this court by way of countering the contentions presented in appellant's assignments of error and will therefore be treated as such.

On November 19, 1987, appellant Taylor filed a "Motion to Expedite Appeal" in this court, which was subsequently granted. The case was set down for oral argument and in a journal entry dated November 30, 1987, this court affirmed the trial court, stating that "the Board of Elections is now free to certify, pursuant to R.C.

3505.33 and 3505.38, the abstract of the results of the November 3, 1987 election of the office of Clerk-Auditor of the city of Oregon." We now take this opportunity to elaborate on said order.

Appellant has set out the following two assignments of error:

"1. The trial court erred when it ruled that plaintiff-appellant failed to establish a clear legal right to the relief sought in this action.

"2. The trial court erred when it ruled that plaintiff-appellant failed to establish a clear legal duty on the part of the defendant-appellee board of elections for which a writ of mandamus should issue."

Due to similarity of content, appellant's two assignments of error will be discussed in tandem.

Initially, we note that strong arguments have been made by intervening appellee that the original complaint was wanting in several important respects and therefore should have been dismissed. As this court stated in *State, ex rel. Cosmos Broadcasting Corp.*, v. *Brown* (1984), 14 Ohio App. 3d 376, 378-379, 14 OBR 481, 484, 471 N.E. 2d 874, 879:

"Inasmuch as the Civil Rules apply to mandamus actions, * * * and Civ. R. 8, 10 and 15 allow for liberal construction and amendment of the pleadings, it would appear that technical rules of form should not ordinarily obstruct a merit determination of the substantive issues. That, we will proceed to do." (Citations omitted.)

Accordingly, the trial court properly accepted appellant's amended complaint and allowed this case to proceed to final disposition.

As noted *supra,* the remedy requested in the instant case is a writ of mandamus to the Lucas County Board of Elections to void and refuse to count any votes cast for Sandy Bihn. R.C. 2731.01 defines "mandamus" as:

"* * * a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

In order to be entitled to a writ of mandamus, the relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondent is under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State, ex rel. Harris, v. Rhodes* (1978), 54 Ohio St. 2d 41, 42, 8 O.O. 3d 36, 37, 374 N.E. 2d 641, citing *State, ex rel. National City Bank, v. Bd. of Edn.* (1977), 52 Ohio St. 2d 81, 6 O.O. 3d 288, 369 N.E. 2d 1200.

The linchpin issue, therefore, is whether the board of elections has the duty to hold separate and not count the votes cast for Sandy Bihn. This same issue was discussed by the Ohio Supreme Court in *State, ex rel. Kay, v. Brown* (1970), 24 Ohio St. 2d 105, 53 O.O. 2d 284, 264 N.E. 2d 908. In that case, relator, a candidate for the United States Senate, sought to prevent respondent, Secretary of State, from counting the votes cast in the November 1970 election for Howard Metzenbaum, also a candidate for the United States Senate. The court at 105-106, 53 O.O. 2d at 285, 264 N.E. 2d at 908-909, stated as follows:

"In this action, relator seeks to obtain a writ of mandamus to prevent respondent from counting the votes. Mandamus is remedial in nature and commands the performance of a duty enjoined by law. Relator does not seek to compel the performance of a duty, but rather to prevent respondent from performing an act. Although relator designates his action as one in mandamus, the relief he seeks is injunctive in nature. * * * *Writ denied.*"

In the instant case, there is no clear legal duty, enjoined by law on the respondents, to not count the votes cast for Sandy Bihn. As stated in the trial court's opinion:

"It is beyond question that Ms. Bihn, by anyone's standards or interpretations, was a qualified elector last Spring and at that time she was certified by the Board to the June, 1987 primary ballot, and thereafter to the ballot for the general election. There has been no suggestion that the Board is under a continuing duty to monitor candidates' credentials under the Charter once certified. There was no request from plaintiff-relator (nor anyone else) to review Ms. Bihn's qualifications and credentials; and there has been no request, until now, to decertify her. There is no suggestion that the Board failed to act in any way. Indeed, as noted, no request for Board action in this case was ever made until eighteen hours before the election. Moreover, no one has suggested that the Board has been derelict in its duties."

Hence, because the board does not have a clear legal duty to perform the act sought by appellant, mandamus is not proper. See, generally, *State, ex rel. Easton, v. Brown* (1953), 160 Ohio St. 184, 51 O.O. 446, 115 N.E. 2d 1; *State, ex rel. Wolfe, v. Lorain Cty. Bd. of Elections* (1978), 59 Ohio App. 2d 257, 13 O.O. 3d 258, 394 N.E. 2d 321.

Notwithstanding the failure of appellant to establish a duty on the board to act in the instant case, appellant has failed to establish a right to the relief requested. As noted by the trial court, Bihn has been a continuous resident of the city of Oregon for some seventeen years or more, and through that entire period has been a registered voter at several different addresses and in several different precincts. She has voted in every general election from 1970 through 1986, inclusive, and virtually every primary election. In the

spring of 1987, Bihn was certified by the board as a candidate in the June 1987 primary. In August 1987, after the primary, but before the general election, she moved to another precinct within the city. R.C. 3503.11(A), governing change of residence before an election, states in pertinent part as follows:

"* * * Any registration or change in registration made at the office of the board of elections or at a permanent registration office later than the thirtieth day preceding a special, primary or general election * * * shall be invalid for that election, but shall be valid for any subsequent election for which the registrant qualifies as an elector."

It is agreed that Bihn had until October 5, 1987 to notify the Lucas County Board of Elections of her change of address. She failed to notify the board of the change of address until October 28, 1987; thus, she was not eligible to vote in the November 3, 1987 general election. As stated in the November 12, 1987 hearing, the position of the Lucas County Board of Elections is that Bihn's status as a registered voter has been uninterrupted. According to the board, it was simply Bihn's eligibility to vote in the November election which was affected by her failure to report her change of address. We agree. The purpose of R.C. 3503.11(A) is quite clear and unambiguous. This provision enables the board of elections to maintain adequate records to ascertain who will be eligible to vote in a specific precinct in a given election, thereby substantially reducing the possibility of fraud.

Section 2, Article V of the Charter of the city of Oregon states in pertinent part as follows:

"No person shall be eligible to hold office of Clerk-Auditor unless he shall have been continuously a resident and a qualified elector of the City for two (2) years next prior to his election. * * *"

At issue is Bihn's status as a "qualified elector." While not defined in the Oregon Charter *per se,* Section 2, Article XIII of the charter incorporates "all laws of the state of Ohio" therein; hence, we look to R.C. 3501.01(N), which states as follows:

" 'Elector' or 'qualified elector' means a person having the qualifications provided by law to entitle him to vote." See, also, *State, ex rel. Ehring,* v. *Bliss* (1951), 155 Ohio St. 99, 44 O.O. 117, 97 N.E. 2d 671.

Bihn's status as a registered voter was not affected by her inability to actually vote in the November general election. R.C. 3501.01(N) speaks in terms of possessing the qualifications to be *entitled to vote.* The statute does not require that an individual must have both the requisite qualifications to be entitled to vote and be actually entitled to vote. Hence, reading Section 2, Article V of the city charter in conjunction with R.C. 3501.01(N), Bihn is a qualified elector because the two-year continuous registration requirement was satisfied. This court will not artificially graft onto the two-year registration prerequisite a requirement of two years' continuous, *actual* voting eligibility. While Bihn was not eligible to actually vote in this specific election, there is no evidence in the record that she lacked the *qualifications* provided by law to entitle her to vote.

Additionally, R.C. 3503.01, also dealing with the qualifications of an elector, states in pertinent part as follows:

"Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days next preceding the election at which he offers to vote, is a resident of the county and precinct in which he offers to vote,

and has been registered to vote for thirty days, has the qualifications of an elector * * *."

In applying R.C. 3503.01, the record indicates that Bihn is over eighteen years of age and has been a resident of the state of Ohio thirty days preceding the November general election. She is a resident of the county and precinct in which she "offer[ed] to vote." More importantly, although she could not actually vote in the general election due to her change of address, she did not lose her status as a registered voter. If that were true, she would have to re-register in order to vote in future elections and such is not the case. A registered voter who fails to timely change his or her address need not re-register to vote in later elections. R.C. 3503.11(A) states that such an untimely notification is "valid for any subsequent election for which the registrant qualifies as an elector." This buttresses our finding that one can qualify as an elector and still not be entitled to vote in a particular election.

In conclusion, it would clearly be against public policy and contrary to the interest of the citizens of Oregon if this court were to deny Bihn the right to assume the office to which she was elected merely because she failed to file a change of address form at least thirty days before the general election and cast her vote in such election. On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., concurs.

CONNORS, J., dissents.

CONNORS, J., dissenting. I respectfully dissent.

This court has been favored by an extraordinarily scholarly decision of the trial judge and I note that he obviously did a great deal of research and analysis before he drafted his judgment order.

However, as to his conclusion and that of my learned colleagues, I must respectfully dissent.

Initially, it should be noted that very little time was given to this court and the trial court in which to deliberate this very important and unusual case. Copies of the final brief were hand-delivered to the homes of the various members of this panel on Saturday afternoon, November 28, 1987. The matter was added to the docket of the court on Monday, November 30, 1987. Oral arguments were heard on that date. Due to the statutory deadline imposed on the Lucas County Board of Elections to certify all the results, pertaining to both candidates and issues, of the election on November 3, 1987, to the Secretary of State on or before November 30, 1987, immediately after oral argument was had, the majority decision of this court was phoned in to the Board of Elections of Lucas County in order that it could certify the results to the Secretary of State. The judgment order of this court was filed the same date and the opinion filed a few days later. It is from that judgment and opinion that I respectfully dissent.

As to all the rulings made by the trial court addressed to the numerous motions filed on behalf of the parties involved, I have no argument. From the record, the trial judge was obviously attempting to be absolutely fair to all involved.

The facts of this case are clearly set out in the record and in the majority opinion and need not be repeated here. Among the facts stipulated to was that intervening appellee, Sandra Bihn, *was not eligible to vote for*

*anything on the ballot, not even herself, of November 3, 1987.*

The issue is simple enough, and the answer thereto is an interpretation of the Charter of the city of Oregon and the Constitution and statutes of the state of Ohio.

The Constitution of the state of Ohio, Section 4, Article XV, provides that "[n]o person shall be elected or appointed to any office in this state unless possessed of the *qualifications of an elector.*" (Emphasis added.)

Was defendant-appellee Sandy Bihn a qualified elector? I am of the opinion that she was not. She could not vote for any candidate or issue on the ballot that day, and did not.

As to the qualification of intervening appellee Sandra Bihn, she had been certified as a candidate for the office of Clerk-Auditor for the city of Oregon in the November 1987 general election by the Lucas County Board of Elections following the primary election of June 1987. Because she moved from the precinct in which she lived at that time and did not re-register with the board of elections more than thirty days prior to the general election of November 3, 1987, *i.e.,* by October 5, 1987, she was ineligible to vote in that general election. She was not an eligible elector and thus disqualified from being on the ballot and from voting in the general election.

One point argued by counsel for intervening appellee at the hearing on November 12, 1987, and restated by the trial court in its opinion, apparently as "fact," was not established in the record by exhibit, stipulation, affidavit or admission of any party. That point is that there was no request from plaintiff-relator (or anyone else) to review Sandra Bihn's qualifications and credentials; and there has been no request, until now, to decertify her. There is no suggestion that the board of elections failed to act in any way. The burden is obviously on a candidate who files a petition for a public office to make certain that he or she is qualified in every respect for the office sought; it is not on the board of elections to make certain that the candidate is qualified. In the case *sub judice,* no request for board action was ever made until eighteen hours before the election, probably when plaintiff-appellant or her committee became aware of it. Plaintiff has never stipulated to such fact and never did.

A close examination of the wording of the Charter of the city of Oregon reveals that intervening appellee was not eligible to hold the office she sought. Section 2, Article V of the charter provides, in pertinent part:

"No person shall be eligible to hold office of Clerk-Auditor unless he shall have been continuously a resident *and a qualified elector* of the City for two (2) years next prior to his election. * * *" (Emphasis added.)

Inasmuch as the Charter of the city of Oregon does not specifically spell out the definition of a "qualified elector," we must look to the statutes of Ohio for such definition, specifically R.C. 3501.01(N). That section states:

" 'Elector' or 'qualified elector' means a person having the qualifications provided by law to entitle him to vote."

Clearly, then, intervening appellee Bihn was not entitled to, and did not, vote on November 3, 1987, because she had not complied with the provisions of R.C. 3503.11(A), which states in part:

"Any registration or change in registration made * * * later than the thirtieth day preceding a special, primary or general election * * * shall be invalid for that election, but shall be valid for any subsequent election for which the registrant qualifies, as an elector."

The statute is quite clear and directive.

The trial court, and inferentially my learned colleagues, found that "the

phrase 'qualified elector' is not defined within the four corners of the Oregon charter." This is so, but having so found, it is necessary to look beyond what the Oregon Charter provides, and the charter clearly incorporates by reference the above-cited definition of a "qualified elector" as set forth in R.C. 3501.01(N).

The Oregon Charter states at Section 2, Article XIII:

"All the laws of the State of Ohio as now or hereinafter enacted which are not in conflict with this Charter, as now or hereinafter amended, or with any ordinance enacted hereunder, shall apply to the government of the City."

Therefore, the city charter, not spelling out who is a qualified elector, and the charter, requiring recognition of the statute, incorporates the state statute which clearly spells out who is a "qualified elector," and, thus, a qualified elector in the city of Oregon must be someone who is entitled to vote, just as everyone else in the state of Ohio. Intervening appellee was not entitled to vote, and was, therefore, not a qualified elector.

Further, the Charter of the city of Oregon provides at Section 1, Article VIII:

"All elections provided for by this Charter * * * shall be conducted by the election authorities prescribed by the laws of Ohio, which laws shall apply to all such elections except as provision is otherwise made by this Charter.* * *"

Thus, R.C. 3501.01(N), 3503.01 and 3503.11(A) are again incorporated into the Charter of the city of Oregon by reference.

The learned trial judge and the intervening appellee cite the case of *State, ex rel. Williamson,* v. *Cuyahoga Cty. Bd. of Elections* (1984), 11 Ohio St. 3d 90, 11 OBR 393, 464 N.E. 2d 138, for the proposition that the "court may not refer to Section 3501.01(N) O.R.C. to flesh out the undefined 'qualified

elector' in the Oregon City Charter." I am of the opinion that that is exactly what the legislature intended when it enacted R.C. 3501.01(N). If a city charter does not (as in the case *sub judice*) clearly spell out the definition of a "qualified elector," then the law and Oregon's Charter require that one look to the controlling state statute to fill the gap. The case of *Williamson, supra,* is clearly distinguishable from the facts in this case. See, generally, *State, ex rel. Busch,* v. *Brown* (1985), 20 Ohio St. 3d 19, 20, 20 OBR 136, 136-137, 485 N.E. 2d 247, 247-248; *State, ex rel. Graham,* v. *Bd. of Elections* (1979), 60 Ohio St. 2d 123, 124-125, 14 O.O. 3d 349, 350, 397 N.E. 2d 1204, 1205; *State, ex rel. Frankenstein,* v. *Hillenbrand* (1919), 100 Ohio St. 339, 126 N.E. 309; *State, ex rel. Froelich,* v. *Montgomery Cty. Bd. of Elections* (1979), 65 Ohio App. 2d 23, 26, 19 O.O. 3d 15, 17, 413 N.E. 2d 854, 857.

Thus, although purporting to be a *registration* requirement, the requirements found in the Charter of the city of Oregon are *primarily* residence requirements and only secondarily registration requirements. Such *residence* requirements have recently been upheld by the United States Court of Appeals for the Sixth Circuit in *City of Akron* v. *Bell* (C.A. 6, 1987), 660 F. 2d 166, and the United States District Court for the Northern District of Ohio in *Speer* v. *City of Oregon* (1987), No. C-87-7516, unreported.

With reference to the thirty-day period specified in R.C. 3503.11(A), effective May 24, 1974, the Legislature of Ohio, in its wisdom, probably enacted this section of the statute in order to conform to the mandate set forth in *Dunn* v. *Blumstein* (1972), 405 U.S. 330. *Dunn* upheld a thirty-day voter registration period before an election "to give officials an opportunity to prepare for the election, to review

registration records with the objective of verifying residence, preventing dual registration, dual voting and other election fraud." *Id.* at 345-349. Although there is no hint of such purposes in the case *sub judice,* the heart of the decision is explicit.

As prayed for by the plaintiff-appellant in the court below, I am of the opinion that there is (and was) a clear legal duty on the board of elections not to officially count, and refuse to certify the abstract of, votes cast for the intervening appellee for the office of Clerk-Auditor of the city of Oregon in the general election of November 3, 1987, and that, therefore, this court should have issued, or ordered the trial court to issue, forthwith, a writ of mandamus to such effect to the Lucas County Board of Elections.

The board of elections is governed by R.C. Chapter 3501. Under that chapter, R.C. 3501.11 provides *inter alia:*

"(T) Establish and maintain a voter registration of all qualified electors in the county who offer to register[.]"

Further, *Williamson, supra,* at 92, 11 OBR at 395, 464 N.E. 2d at 141, supports the proposition that this court should determine that intervening appellee was an ineligible candidate for the office she sought and that defendant-appellee board of elections is under a clear legal duty "to count only the votes for relator." See, also, the duties imposed upon the board under R.C. 3501.11(Q), which provides that a board shall *"[i]nvestigate and determine the residence qualifications of electors[.]"* (Emphasis added.)

I further find that the notice of appeal to this court by intervening appellee is inappropriate and without merit, there being no basis for such an appeal. She has, furthermore, failed to state the part of the judgment of November 18, 1987 which she is appealing, as required by Rule 3(C) of the Ohio Rules of Appellate Procedure. Her counsel simply filed, on her behalf, two recaptioned briefs previously filed in the trial court. These briefs outline appellee's *procedural* concerns, and because the trial court ruled in favor of plaintiff-appellant Taylor on *procedural* issues, Taylor assumes, properly so, that intervening appellee is appealing the ruling on *procedure.*

Because the trial court ruled in favor of intervening appellee Bihn on the merits of this case, and the majority of this court has affirmed said ruling, thereby permitting certification of ballots cast for her on November 3, 1987, intervening appellee has won the case. Thus, there is no basis for an appeal by her.

Section 3(B)(2), Article IV of the Ohio Constitution and R.C. 2505.02 state that an appeals court may review "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment" for one of the parties. In the case *sub judice,* the trial court issued no order which determined the case against or prevented a judgment in favor of intervening appellee. In fact, the trial court ruled on the merits and determined the action in her favor; it is illogical for her to claim that any ruling of the court below barred a judgment in her favor. The trial court's ruling did not rise to the level of affecting a substantial right of intervening appellee.

Ohio courts have frequently ruled that a party who has prevailed in a court's final order does not have the right of appeal, unless he or she is attempting to modify that final judgment. Such is not the case here. Perhaps the proper course in this case was for intervening appellee not to appeal but to file her assignment of error pursuant to R.C. 2505.02. See *Parton* v. *Weilnau* (1959), 169 Ohio St. 145, at

171, 8 O.O. 2d 134, at 148, 158 N.E. 2d 719, at 736.

I am of the opinion that the notice of appeal is improper because the judgment of the trial court did not adversely affect her rights. Simply stated, her appeal should be disregarded by this court.

Plaintiff-appellant has standing to challenge the validity of intervening appellee's candidacy. Taylor is, and was, a qualified elector (by any definition) of the city of Oregon. See *Foster v. Cuyahoga Cty. Bd. of Elections* (1977), 53 Ohio App. 2d 213, 7 O.O. 3d 282, 373 N.E. 2d 1274.

Plaintiff-appellant sought the proper remedy, that of mandamus. See *State, ex rel. Spangler,* v. *Bd. of Elections* (1983), 7 Ohio St. 3d 20, 7 OBR 487, 455 N.E. 2d 1009. In that case, the Ohio Supreme Court approved the action and ordered a writ of mandamus to compel the board of elections to strike the name of the candidate, which should have been ordered by the trial court herein. See, also, an analogous case, *State, ex rel. Burech,* v. *Belmont Cty. Bd. of Elections* (1985), 19 Ohio St. 3d 154, 19 OBR 437, 484 N.E. 2d 153. Based on the judgments of the Ohio Supreme Court, *supra,* mandamus is the proper action in the case *sub judice* and intervening appellee's objection is without merit.

Another of intervening appellee's objections is without merit. She claims the trial court erred in permitting plaintiff-appellant to amend her complaint. The trial court properly allowed the amended complaint. See Rule 15(A), Ohio Rules of Civil Procedure, which allows such discretion on the part of the trial court. The only change in the amended complaint was that of the caption.

Again in its attempt to be fair to all parties, the trial court admitted into evidence the affidavit of plaintiff-appellant, Taylor, to which intervening appellee objected. I would overrule intervening appellee's objection, as did the trial court. In any event, the evidence sought to be brought before the trial court would have come in if a trial would have been held instead of a hearing.

Based upon my conclusions as set forth above, I am of the opinion that the trial court in its judgment was incorrect, and that the relief requested by plaintiff-appellant Taylor in the form of a writ of mandamus directed to the board of elections should have been granted. This should be done based on a reversal of the trial court's order and a remand to the trial court with directions to grant the relief prayed for or by this court pursuant to App. R. 12.

I, therefore, respectfully dissent from the majority opinion of this court.