OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Paluf et al., Appellees, v. Feneli, Appellant.
[Cite as State ex rel. Paluf v. Feneli (1994),          Ohio St.3d          .]
Public employment -- Challenge to city law director's right to office not maintainable in quo warranto, when.
(No. 93-279 -- Submitted February 22, 1994 -- Decided April 27, 1994.)
Appeal from the Court of Appeals for Cuyahoga County, No. 63383.

Dale C. Feneli, respondent-appellant, appeals from a judgment entered by the Court of Appeals for Cuyahoga County in favor of Timothy G. Paluf and Virginia Swanson, Mayor of Highland Heights, Ohio, relators-appellees. The court of appeals granted a writ of quo warranto based upon its determination that Feneli unlawfully held and exercised the position of city law director and that Paluf was entitled to that office.

Appellant filed a complaint for a writ of quo warranto which challenged the Highland Heights City Council's refusal to confirm Swanson's appointment of Paluf to the position of city law director as well as the city council's enactment of an ordinance appointing Feneli to that position. The complaint, as subsequently amended, also requested the issuance of a writ of mandamus directing the city council to confirm Paluf as law director. Appellant and the city council members filed an answer denying that appellees were entitled to the requested extraordinary relief.

The parties subsequently filed cross-motions for summary judgment, and the evidence adduced the following, pertinent facts. On October 18, 1966, the city of Highland Heights adopted a charter. The charter provides for a mayor-council form of municipal government with its general powers divided between the mayor and the city council. Section 5.05, Article V of the charter provides that the mayor is the executive head of the city. The mayor is responsible to the electors for the operation of all departments or divisions and possesses the general power to "appoint, promote, transfer, reduce or remove any officer or employee" of the municipality. Id. Section

5.05, Article V of the charter further provides that "[i]n the event of a vacancy occurring in a position subject to the appointment power of the Mayor, the Mayor must exercise such appointment power within thirty (30) days from the date on which the Mayor receives official notification of the vacancy or within thirty (30) days after refusal of confirmation by City Council; otherwise, Council may fill the vacancy by majority vote."

The director of law position is governed by Section 6.02, Article VI of the charter:

"The Director of Law shall be the head of the Law Department.  He shall be provided a Prosecutor and such assistants and special counsel as the City Council may from time-to-time deem necessary and desirable.  The Law Director, Prosecutor and any such assistants shall be appointed by the Mayor, subject to confirmation by four (4) members of Council and shall thereafter serve at the pleasure of the Mayor.  Every second year, commencing in the year 1976, the Mayor shall either reappoint the Director of Law or make a new appointment, each of which shall be subject to confirmation by a majority vote of the members of Council. * * * The Director of Law * * * shall perform such other duties consistent with the office as the Mayor or the Council may request.  No person shall act as Director of Law unless duly admitted to practice law in the State of Ohio."  (Emphasis added.)

On February 18, 1991, Highland Heights City Council Resolution No. 24-1991 became effective.  It established terms, conditions, and compensation for the law director position. Section 8 of the ordinance provided:

"The terms and conditions of this Resolution shall be effective until December 31, 1991 or until the appointment of a successor Law Director.  However, either party may terminate this agreement by providing to the other thirty (30) days written notice of such intent to terminate."

On December 10, 1991, the city council enacted Codified Ordinance No. 41-1991.  Section 115.08(k) of the ordinance specifies that any appointee's name must be submitted to the clerk of the city council at least ten days prior to the meeting at which the appointment is to be considered.

Both Feneli and Paluf have been duly admitted to practice law in Ohio.  Feneli was admitted to practice law in 1975 and worked as an assistant law director for the cities of University Heights and Olmsted Falls, Ohio, from 1976 until 1980.  Paluf was admitted to the practice of law in 1978, and from 1978 to 1985, he assisted Thomas G. Longo, who served as the assistant law director for the cities of Solon and Bedford, Ohio.  In that capacity, Paluf drafted legislation and revised a city charter.  Paluf also researched zoning issues and served as acting prosecutor in the Bedford Municipal Court.  Since 1985, Paluf has been engaged in private practice in the areas of personal injury, workers' compensation, probate, domestic relations, and criminal defense.  Additionally, he has served almost four years as a member of the Highland Heights Civil Service Commission, with one and a half of those years as chairman.  He described his municipal law experience as neither a "major amount" nor a "very little amount."

In 1980, Feneli was appointed law director by the former

mayor of Highland Heights. When Swanson was elected mayor in 1987, she reappointed Feneli and subsequently reappointed him for another two-year term in 1989. In late December 1991, Swanson informally notified Feneli that he would not be reappointed city law director. By letter dated January 2, 1992, Swanson formally notified Feneli that she was terminating him from his city law director position pursuant to Highland Heights Resolution No. 24-1991, Section 8. The letter stated that Feneli would continue as law director for thirty additional days. On January 7, 1992, Swanson formally appointed Paluf as law director. Paluf contacted some city council members and met with three of them at a local restaurant. On January 14, 1992, the city council refused to confirm Paluf. A January 17, 1992 letter from Swanson to Feneli reiterated that his last date as law director would be February 2, 1992.

On February 4, 1992, Swanson again appointed Paluf as city law director. In a letter dated February 7, 1992 from Brent E. Lawler, the city council president, to Paluf, Lawler requested Paluf's attendance at a February 11, 1992 council meeting to interview him for the city law director position. Following the interview, the city council passed Codified Ordinance No. 14-1992, which specified that a vacancy in the law director position existed on December 31, 1991 and that Swanson's second "attempted" appointment of Paluf on February 4, 1992 was void. The city council appointed Feneli as law director pursuant to Section 5.05, Article V of the city charter. Swanson vetoed the ordinance on February 20, 1992, but the city council overrode the veto on March 10, 1992. One of the asserted grounds for council's refusal to confirm either appointment of Paluf was his "lack of experience."

The court of appeals granted Paluf's motion for summary judgment and issued a writ of quo warranto in his favor establishing his entitlement to the Highland Heights law director position. Other issues raised by the parties, including appellees' mandamus action and the applicability of discretionary standards, were determined to be moot because of the court's ruling.

This cause is before the court upon an appeal as of right.

Philip J. Korey, for appellees.
Louis H. Orkin and Judith Carlin, for appellant.

Per Curiam. Appellant in his first proposition of law asserts that the court of appeals erred in granting the writ of quo warranto to Paluf. In order for a writ of quo warranto to issue, a relator must establish (1) that the office is being unlawfully held and exercised by respondent, and (2) that relator is entitled to the office. State ex rel. Delph v. Barr (1989), 44 Ohio St.3d 77, 541 N.E.2d 59, syllabus; State ex rel. Randles v. Hill (1993), 66 Ohio St.3d 32, 34, 607 N.E.2d 458, 460.

The court of appeals determined that the Highland Heights Charter provided that the selection of a law director was an executive act vested in the mayor, subject to confirmation by the city council only to assure compliance with the sole qualification specified in the charter, i.e., that the law

director be admitted to practice law in Ohio.  The court of appeals based its determination upon State ex rel. Halak v. Skorepa (1983), 6 Ohio St.3d 97, 6 OBR 135, 451 N.E.2d 777, State ex rel. Corrigan v. Noble (1986), 26 Ohio St.3d 84, 26 OBR 72, 497 N.E.2d 84, and Cuyahoga Falls v. Robart (1991), 58 Ohio St.3d 1, 567 N.E.2d 987, as well as the interpretative maxim expressio unius est exclusio alterius.  Appellant contends that the foregoing authorities are inapplicable and that the lower court's interpretation contravenes the intent of the city charter as well as the separation of powers doctrine.

Municipalities, pursuant to the powers granted by Section 3, Article XVIII of the Ohio Constitution (the Home Rule Amendment), "'have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.'"  Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel (1993), 67 Ohio St.3d 579, 582, 621 N.E.2d 696, 699.  The phrase "not in conflict with general laws" does not modify the "powers of local self-government" language of the constitution; therefore, Section 3, Article XVIII of the Ohio Constitution empowers municipalities to enact requirements for employees which differ from those set forth within the Revised Code.  See, e.g., Fenton v. Enaharo (1987), 31 Ohio St.3d 69, 70-71, 31 OBR 183, 184, 509 N.E.2d 67, 68-69.

This case involves the interpretation of the Highland Heights Charter.  In interpreting a charter, the following principles should be emphasized:

"The provisions of a home rule charter derive their authority from the Ohio Constitution itself, which is the source and, together with the Constitution of the United States, is the measure of the extent of the validity of the provisions.  The construction of a charter is a matter of law, to be determined by a court.

"Municipal charters are to be so construed as to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible.  In the absence of circumstances requiring otherwise, language used in a municipal charter is to be construed according to its ordinary and common usage. * * *" (Footnote omitted.)  1 Gotherman & Babbitt, Ohio Municipal Law (2 Ed.1992) 55, Section T 4.39, citing State ex rel. Butcher v. Wildenheim (Jan. 3, 1990), Lorain App. No. 89CA4563, unreported; cf., also, R.C. 1.42; State v. S.R. (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319, 1323.

Section 6.02, Article VI of the charter provides that the mayor's appointment of a law director is expressly "subject to confirmation by a majority vote of the members of Council."  As noted by appellant, there is a distinction between the power to appoint and the power to confirm:

"Ordinarily, the word 'appoint,' means to name or designate some person to hold the office.  It involves a matter of choice in the selection of the person to hold the office. * * * It is apparent from an examination of Section 21 [of Article III, Ohio Constitution] that no power to appoint was vested in the Senate, that at the time the Senate acts the appointment is complete, and that the Senate has only the negative power to reject such appointment."  State ex rel.

Brothers v. Zellar (1966), 7 Ohio St.2d 109, 113, 36 O.O.2d 107, 109, 218 N.E.2d 729, 732.

Similarly, the Highland Heights Charter grants council the power to reject a mayoral appointment for the position of law director. In effect, the appointment process appears to be a practical outworking of the doctrine of separation of powers, with the mayor appointing the law director subject to council confirmation. See, generally, 1 Rotunda & Nowak, Treatise on Constitutional Law (2 Ed.1992) 669, Section 9.4.

As noted previously, the court of appeals relied upon several prior cases of this court to support its issuance of a writ of quo warranto. In Halak, supra, at 98, 6 OBR at 136, 451 N.E.2d at 778, the court allowed a writ of mandamus to compel the approval by the City Council of North Royalton, Ohio, of the mayor's appointment for law director where the charter specified that "[d]isapproval by Council shall be allowed when an appointee fails to meet the qualifications of the position established by Charter or by Ordinance" and the charter did not define the qualification of two years, "experience in the field of municipal law." (Emphasis deleted.)

Halak emphasized at 99, 6 OBR at 137, 451 N.E.2d at 779, in allowing the writ:

"The need for established guidelines is well-illustrated herein. In adopting these charter provisions, it is apparent that the people of North Royalton intended first, that the qualifications for the position of law director be fixed and determined by the Charter. Secondly, the Mayor was granted the power to appoint a law director having the specified qualifications. Third, City Council was granted the power to disapprove an appointment only where the appointee does not meet the specified qualifications."

Conversely, in this case, the city council's power pursuant to the charter to disapprove the mayor's appointment of a law director was not restricted to a failure to meet the qualifications specified in the Highland Heights Charter. Consequently, Halak is inapposite.

Similarly, Robart merely held that when a city charter imposes a duty on the law director to represent the city in all its litigation, the charter prohibits, by implication, the city from appointing outside counsel, in place of the regular law director, to represent the city in its litigation. Robart acknowledged that the charter provision did not affect the city's ability to employ outside counsel to assist the law director. Id., 58 Ohio St.3d at 5, 567 N.E.2d at 991-992, fn. 2. In Corrigan, the court held that in view of the provisions of the charter, a newly elected mayor need not accept the discretionary appointees of the previous mayor. By contrast, appellee Swanson reappointed Feneli twice to the law director position before deciding to make a new appointment.

The court of appeals further relied upon expressio unius est exclusio alterius to hold that by specifying in the charter that the law director must be duly admitted to practice law in Ohio, the people of the city inferentially expressed an intention that admittance to the practice of law was the only required qualification and, further, that council could only refuse to confirm an appointment because of a failure of an appointee to meet that sole qualification. Expressio unius est

exclusio alterius is an interpretative maxim meaning that if certain things are specified in a law, contract, or will, other things are impliedly excluded. Harris v. Atlas Single Ply Sys., Inc. (1992), 64 Ohio St.3d 171, 173, 593 N.E.2d 1376, 1378; Vincent v. Zanesville Civ. Serv. Comm. (1990), 54 Ohio St.3d 30, 33, 560 N.E.2d 226, 229, at fn. 2. The maxim has been applied in quo warranto cases to exclude additional statutory qualifications where municipal charters state only certain qualifications. State ex rel. Kohl v. Dunipace (1978), 56 Ohio St.2d 120, 10 O.O.3d 309, 382 N.E.2d 1358; State ex rel. Bindas v. Andrish (1956), 165 Ohio St. 441, 60 O.O. 92, 136 N.E.2d 43. Cf. Fenton, supra, at 72, 31 OBR at 185-186, 509 N.E.2d at 69-70. However, the mere fact that other statutory qualifications were impliedly excluded by the Highland Heights Charter's specification that the law director be admitted to practice law in Ohio, does not support the further conclusion that council was thereby limited to that qualification. As noted earlier, the charter here, unlike the one in Halak, did not specifically limit council's confirmation power. Confirmation power is in the nature of an additional qualification to hold office after initial appointment. The power may be limited and specific, as in Halak, or broad, as in this case. It is broad when not specifically limited by reference to other qualifications, or otherwise. In any case, it is an independent charter requirement, and, as such, is not governed by the cases that concern additional statutory qualifications.

The home rule powers of local self-government are available unless restricted, and, therefore, a city possesses authority to act in ways not specified by, but not in violation of, its charter. State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections (1991), 62 Ohio St.3d 17, 21, 577 N.E.2d 645, 648. Consequently, the city council possessed the power to refuse to confirm Paluf for reasons other than the failure to comply with the single qualification specified in the charter. The court of appeals reasoned that "[i]f the mayor must answer to the electorate for what happens in the law department, then the mayor must be able to control it." However, the charter expressly provides for council's confirmation power, which is not limited to the specified qualification. Also, the charter specifies that the law director performs duties for the council as well as the mayor. Additionally, the existence of the confirmation power does not necessarily usurp the mayor's "control" of the law department. In interpreting city charter provisions, neither their wisdom nor their desirability is subject to judicial review as long as it is a matter of purely local concern. State ex rel. Hackley v. Edmonds (1948), 150 Ohio St. 203, 217, 37 O.O. 474, 479, 80 N.E.2d 769, 775; Gotherman & Babbitt, Ohio Municipal Law, supra, at 41, Section T 4.01(C). Moreover, this interpretation is no more violative of the separation of powers doctrine than are the advise and consent clauses of the United States and Ohio Constitutions. See State v. Warner (1990), 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18, 31, for a general discussion concerning separation of powers; cf., also, Leek v. Theis (1975), 217 Kan. 784, 539 P.2d 304.

The court of appeals finally concluded that it could not

"infer that council has an unlimited scope of review of appointment, because such an inference would produce unacceptable means to circumvent the charter." However, appellant has never contended that council possesses an "unlimited scope of review." Instead, appellant concedes that council's determination may still be reviewed to correct an abuse of its discretion. See, e.g., State ex rel. Glass, Molders, Pottery, Plastics & Allied Workers Internatl. Union, Local 333, AFL-CIO, CLC v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 157, 159, 609 N.E.2d 1266, 1267 (mandamus is an appropriate remedy where no statutory right to appeal is provided to correct an abuse of discretion in administrative proceedings). Additionally, such interpretation does not "circumvent" the charter; instead, it gives effect to its plain language.

In sum, in reviewing the manifest language of the Highland Heights Charter, the court of appeals erred in concluding that council's confirmation power was limited to a determination as to whether the law director appointee was admitted to practice law in Ohio. Neither Halak, Robart, Corrigan, expressio unius est exclusio alterius, nor the doctrine of separation of powers requires a contrary result. Any dissatisfaction with the charter provision may be expressed through amendment of the charter by the people of Highland Heights. Appellant's first proposition of law is well taken.

Appellant in his second proposition of law asserts that the court of appeals erred in failing to grant his motion to dismiss Swanson from the quo warranto action. An action in quo warranto may be brought by an individual as a private citizen only when he personally is claiming title to a public office. R.C. 2733.06; State ex rel. Coyne v. Todia (1989), 45 Ohio St.3d 232, 238, 543 N.E.2d 1271, 1277. Swanson never personally claimed title to the law director position. Nevertheless, the parties ignore the fact that the court of appeals did grant appellant's motion by dismissing Swanson from the quo warranto proceeding in an entry filed on December 18, 1992. Therefore, appellant's second proposition of law is meritless.

Accordingly, for the foregoing reasons, the judgment of the court of appeals issuing a writ of quo warranto to appellee Paluf is reversed and the cause is remanded to that court to determine the various issues which it found to be moot in light of its holding.

Judgment reversed
and cause remanded.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.