The STATE ex rel. KLEIN

v.

CUYAHOGA COUNTY BOARD OF ELECTIONS et al.

[Cite as *State ex rel. Klein v. Cuyahoga Cty. Bd. of Elections* (1995), 102 Ohio App.3d 124.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68223.

Decided May 1, 1995.

*McTigue & Brooks* and *Donald J. McTigue;* and *William Michael O'Neill,* for relator.

*Michael P. Butler* and *Patrick J. Murphy,* Assistant Cuyahoga County Prosecuting Attorneys, for respondents Cuyahoga County Board of Elections, Jimmy Dimora, Marguerite S. Hughes, Roger M. Synenberg, and Ann White.

NAHRA, Judge.

On December 5, 1994, the relator, Jay Klein, commenced this prohibition and mandamus action against the respondents, the Cuyahoga County Board of Elections, Jimmy Dimora, Ann White, Roger Synenberg and Marguerite Hughes, to compel them to oust Michael Corrigan as a judge of the Cuyahoga County Common Pleas Court. Subsequently, Klein admitted that the prohibition action was moot; thus, it is dismissed and the application for an alternative writ of prohibition filed therewith is denied. The parties have submitted the mandamus action on cross-motions for summary judgment. For the following reasons, the court denies the application for a writ of mandamus.

The parties agree that in 1992 and 1993 Michael Corrigan was a member of the Democratic Party and voted the Democratic primary election ballot. In January 1994, he filed his declaration of candidacy for common pleas judge in the May 3, 1994 Democratic primary. On March 9, 1994, the board of elections approved the validity and sufficiency of Judge Corrigan's petition and certified his name on the ballot. No one filed a protest to his candidacy, and no one suggests that as of that date judge Corrigan was not properly certified as a Democratic candidate. Moreover, Judge Corrigan was unopposed for that particular judgeship.

On April 5, 1994, the absentee balloting began. On primary election day, May 3, Corrigan voted the Republican Party primary ballot, as established by the

public records relating to the election. No one challenged Corrigan's vote. On June 7 the board of elections certified the results of the primary election and declared Corrigan the victor in the Democratic primary for that particular judgeship. In the November 8, 1994, nonpartisan general election, Corrigan was unopposed. Again no one, including Klein, protested his candidacy in any way. On or about November 16, 1994, Klein read a newspaper article in which Corrigan discussed his change from Democrat to Republican; the article stated his reasons were philosophical.

Approximately three weeks later Klein filed this writ action. He asserts that he is a member of the Cuyahoga County Democratic Party Central and Executive Committees and a ward leader for Lyndhurst, that he supported and worked for Judge Corrigan's candidacy, and that he voted for him at the May 3, 1994 primary. Klein further alleges that had he known that Corrigan would change parties, he would not have supported or voted for him. On December 6, 1994, the board of elections certified the election results, including Corrigan's victory.

The gravamen of Klein's argument is that Corrigan violated R.C. 3513.191 by declaring himself a Democratic candidate for the primary and then voting Republican in the same primary. That statute provides: "No person shall be a candidate for nomination or election at a party primary if he voted as a member of a different political party at any primary election within the current year and the next preceding two calendar years." Klein seizes upon the language "in the current year" and deduces that because Corrigan voted Republican in the May 3, 1994 primary, he disqualified himself as a Democratic candidate, even though he had already properly qualified as a candidate.

As a mechanism to decertify Corrigan's election, Klein relies upon R.C. 3513.22, which provides in part: "If, after certifying and sending abstracts and parts thereof, a board finds that any such abstract or part thereof is incorrect, it shall promptly prepare, certify, and send a corrected abstract or part thereof to take the place of each incorrect abstract or part thereof theretofore certified and sent." He argues, without any case authority, that this section allows a board of elections retroactively and without protest or hearing to test the eligibility and qualifications of a candidate after an election and, if appropriate, decertify him as the winner and effectively oust him from office.

 Klein's application for a writ of mandamus fails on the merits. The requirements for mandamus are well established: (1) the relator must have a clear legal right to the relief requested, (2) the respondent must have a clear legal duty to perform the requested relief, and (3) there must be no adequate remedy at law. *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 515 N.E.2d 914; *State ex rel. Taylor v. Lucas Cty. Bd. of Elections* (1988), 43 Ohio App.3d 176, 540 N.E.2d 292. A board of elections has no duty to apply R.C. 3513.191 in a

retroactive fashion to decertify a candidate, whom the board properly declared eligible, and in effect to disfranchise the electors who voted for that candidate.

First, Klein has not cited, nor has this court found, any controlling or persuasive authority for the specific proposition that a board of elections must decertify or rule as ineligible a candidate who properly qualified as a candidate for one party and then voted as a member of another party at the relevant election.

The focus of R.C. 3513.191 is on the prerequisites to be a *candidate* for *nomination* or *election at a party primary.* The right to be a candidate must necessarily be established before the primary. The use of the word *candidate,* rather than the phrase *no person shall be elected to office,* reveals that the scope of this statute is limited to qualifying a person before the primary. The need for certainty and finality in election matters requires that the outcome of an election, including a primary election, not be overturned or thwarted by events subsequent to the point when candidates have been established as eligible for the ballot. Accordingly, the latter qualifying phrases in R.C. 3513.191 must have their effect prior to the relevant primary.

An analysis of R.C. Chapter 3513, especially the timing allotted for protests, verifies the above principle. The vehicle for challenging a candidate's qualifications is the statutorily provided protest under R.C. 3513.05, which governs various primary procedures, including protests. A candidate's qualifications are not tested by an election contest, the certification process under R.C. 3513.22 or some other means. The Supreme Court of Ohio clarified this point of law in *Portis v. Summit Cty. Bd. of Elections* (1993), 67 Ohio St.3d 590, 621 N.E.2d 1202, in which it rejected the proposition that an election contest could be used to submit an untimely protest. The court unequivocally ruled that a candidate's qualifications are tested via the protest.

Under R.C. Chapter 3513 the time specified for making a protest to a person's candidacy is up to sixty-four days before the primary. R.C. 3513.05. After that time the board of elections has no duty to consider protests. In *Pierce v. Brushart* (1950), 153 Ohio St. 372, 378, 92 N.E.2d 4, 7, the Supreme Court of Ohio held that when "a protest is not filed with the board of elections before the *required day prior to the election*, it is too late to be effective and the board of elections may disregard it * * *." See, also, *State ex rel. Cassidy v. Zaller* (1943), 142 Ohio St. 186, 27 O.O. 27, 50 N.E.2d 991. Similarly, R.C. 3513.262 and 3513.263 limit the time specified for protesting candidates who use nominating petitions for the general election. The code provides no other opportunities for protesting the qualifications of a candidate. Furthermore, these statutes provide that the determinations of the boards of election are to be final. The absence of a means to protest a candidate's qualifications after the primary election evinces

the legislative intent that events simultaneous with or subsequent to the election are not grounds for protesting and disqualifying a candidate.

The *"within the current year"* language of R.C. 3513.191 is necessitated by the possibility of primaries for special elections pursuant to R.C. 3513.32. The previous version of R.C. 3513.191 prohibited a person from being a candidate for nomination or election at a party primary if he voted as a member of a different political party at a primary election within the preceding four calendar years. However, it said nothing of primaries which might have been previously held in the same year. Thus, all of the preceding primaries might not be considered. The *"current year"* language fills this omission and allows the board of elections to examine all of the relevant preceding time to determine whether the candidate fulfills the prerequisites for running in a primary election.

Considering only the previous voting record for purposes of determining eligibility to be a candidate at a party primary is consistent with the amendments to R.C. 3513.19. Under the previous version of that statute, a person challenged at a primary when switching parties had to swear in an affidavit that at the last general election he voted for more members of his "new" party than he did of his "old" party. The amendments greatly liberalize a person's ability to change parties. Now, when challenged, a person must only state under penalty of election falsification that he desires to be affiliated with and supports the principles of his "new" party. No law prohibits candidates or anyone else from changing parties at a primary election, which is the only time such a declaration is required. Thus, the mandamus claim fails because what Judge Corrigan did was permissible.

*State ex rel. Taylor v. Lucas Cty. Bd. of Elections, supra,* is instructive on the issue of whether a board of elections has a duty to consider events subsequent to certifying a candidate for a primary for purposes of evaluating eligibility. In *Taylor,* between the time of the primary and general elections the candidate moved to another precinct within her city, but she omitted to inform the board of the move until it was too late for her to be eligible to vote in the general election. The relator argued that the candidate was no longer a qualified elector, and thus she was ineligible to continue as a candidate, and any votes for her should not be counted and certified. The court of appeals in ruling that the candidate had actually not lost her status as either a candidate or a qualified elector further indicated that the board of elections was not under a continuing duty to monitor candidates' credentials once they were certified.

In the present case there is no doubt that Judge Corrigan properly qualified as a candidate before the primary. The respondents had properly completed their duty at that time. The statutory scheme of R.C. Chapter 3513 and the common law concerning protests establish that the board had no duty to conduct further

examinations after the time for protests had lapsed. The board had no duty to consider events subsequent to the time of certification for the primary and no duty to summarily decertify a candidate for eligibility after the general election. To rule otherwise would improperly and imprudently expand the scope of R.C. 3513.191 and rewrite R.C. Chapter 3513, would disfranchise voters from two elections, and would risk infringing liberty and property interests. Since respondents have no duty to examine qualifications after the election, Klein's application for mandamus again fails on the merits.

 The court further notes that Klein did not timely pursue this mandamus action. In election cases extreme diligence and the promptest of action are required. *Brink v. Franklin Cty. Bd. of Elections* (1985), 21 Ohio App.3d 283, 21 OBR 401, 488 N.E.2d 240; *Foster v. Cuyahoga Cty. Bd. of Elections* (1977), 53 Ohio App.2d 213, 7 O.O.3d 282, 373 N.E.2d 1274. Thus, the courts of Ohio have ruled that commencing a writ action even before the general election is dilatory. *State ex rel. Friedlander v. Myers* (1934), 128 Ohio St. 568, 1 O.O. 167, 192 N.E. 737; *State ex rel. Bargahiser v. Richland Cty. Bd. of Elections* (1968), 14 Ohio St.2d 129, 43 O.O.2d 238, 237 N.E.2d 133; *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1989), 47 Ohio St.3d 117, 548 N.E.2d 230.

In the present case, Klein never filed a protest. Rather, he waited until the day before the results of the general election were to be certified to file this action. This demonstrates an extreme lack of diligence. As the court in *Brink* noted, granting relief would disfranchise all those who voted for Judge Corrigan in both the primary and general elections. Klein endeavors to excuse his dilatory actions by claiming that Judge Corrigan concealed his actions, *i.e.*, voting Republican at the primary and not announcing it to the news media immediately. However, making one's actions a matter of public record cannot be characterized as concealment. Judge Corrigan's voting Republican became a matter of public record when he requested the Republican ballot. Any failure to act on this record reflects a lack of due diligence on the part of the relator rather than concealment on the part of Judge Corrigan. Laches precludes granting relief under these facts.

 Moreover, the Supreme Court of Ohio has repeatedly ruled that protests and other matters relating to candidacies become moot after the election has been held. *State ex rel. Patrick v. Cuyahoga Cty. Bd. of Elections* (1962), 174 Ohio St. 12, 21 O.O.2d 36, 185 N.E.2d 433; *State ex rel. Keller v. Loney* (1959), 169 Ohio St. 394, 8 O.O.2d 420, 159 N.E.2d 896; *Maranze v. Montgomery Cty. Bd. of Elections* (1958), 167 Ohio St. 323, 4 O.O.2d 401, 148 N.E.2d 229. See, also, *State ex rel. Whetsel v. Murphy* (1930), 122 Ohio St. 620, 621, 174 N.E. 252, 253:

"The primary election having been closed and the result declared the court will not order the choice of the people at the primary election to be disregarded."

Accordingly, because relief is barred by laches, because the matter is moot, because the respondents have no duty to perform the requested relief, and because no impropriety was committed, Klein's application for mandamus is denied. Relator to pay costs.

*Writ denied.*

HARPER and PORTER, JJ., concur.